**Daisy GOODWIN et al., Plaintiffs,**

v.

**George K. WYMAN, Commissioner of Social Services for the State of New York, individually and in his official capacity, and the New York State Department of Social Services, Defendants.**

No. 71 Civ. 1937.

United States District Court,
S. D. New York.

July 7, 1971.

John DeWitt Gregory, Community Action for Legal Services, Inc., New York City (Lawrence J. Fox, New York City, of counsel), George Cooper, Henry A. Freedman, Center on Social Welfare Policy and Law, New York City (Steven J. Cole, New York City, of counsel), Thomas McGanney, Donald T. Mac-Naughton, William B. Rozell, Fredric A. Newman, Bruce Buck, Jack Greenberg, Community Law Offices, New York City (Charles Stephen Ralston, New York City, of counsel), for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; Joel Lewittes, Asst. Atty. Gen., of counsel.

Before KAUFMAN, Circuit Judge, and BONSAL and TENNEY, District Judges.

## OPINION

PER CURIAM.

■ By order dated May 27, 1971, this statutory court was duly designated to hear and determine plaintiffs'[1] constitutional challenge to Section 131–a of the New York Social Services Law, McKinney's Consol.Laws, c. 55, as amended by Chapter 133 of the Laws of 1971. Urging that amended Section 131–a is violative of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and inconsistent with Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq., plaintiffs seek both injunctive and declaratory relief pursuant to 28 U.S.C. §§ 1343(3) (4), 2201, 2202, and 42 U.S.C. § 1983.

In substance, plaintiffs claim that the challenged amended statute, which reduces by ten per cent the public assistance benefits paid to two of five categories of welfare recipients throughout the State, invidiously discriminates against New York's black and Puerto Rican citizens. The five groups of beneficiaries at issue herein are those receiving: (1) Old Age Assistance (OA); (2) Aid to the Disabled (AD); (3) Aid to the Blind (AB); (4) Home Relief (HR); and (5) Aid to Dependent Children (ADC). We accept as substantially accurate plaintiffs' unchallenged statistical analysis of the numerical and racial composition of the five categories, which demonstrates that both the ADC (which is by far the largest group) and HR groups consist primarily of blacks and Puerto Ricans, while the OA and AB group members are predominantly white. The AD category is approximately 50 per cent white and 50 per cent black and Puerto Rican.

Although the standard of need for each beneficiary under the various programs has legislatively been determined to be identical, Chapter 133 cuts by 10 per cent the benefits paid to the recipients of ADC and HR while maintaining the payments made to all other beneficiaries; that is, OA, AD and AB beneficiaries receive 100 per cent of their predetermined need, while ADC and HR recipients receive only 90 per cent of their need.

It should further be noted that in addition to cutting the ADC and HR benefits by 10 per cent, Chapter 133 also unifies the statewide standard of need in accordance with this circuit's ruling in Boddie v. Wyman, 434 F.2d 1207 (2d Cir. 1970), aff'd 402 U.S. 991, 91 S.Ct. 2168, 29 L.Ed.2d 157 (May 25, 1971). Although the effect of such unification has been to make the New York City and downstate metropolitan county ADC and HR beneficiaries (which groups

---

1. By memorandum-opinion and order dated May 14, 1971, the issue as to the appropriateness of the instant suit for class determination was specifically reserved for consideration by the three-judge court. We conclude that this action is proper for consideration as a class action under Fed.R.Civ.P. 23(a), (b) (2).

consist of an even larger percentage of blacks and Puerto Ricans than the same categories in other areas of this State) the only persons to realize an actual dollar loss in payments by the reduction while increasing the benefits paid to the predominantly white OA, AD and AB beneficiaries residing outside of the New York City metropolitan area,[2] the State can hardly be faulted for its compliance with lawful court orders.

■ It is urged by plaintiffs that since welfare assistance grants have been maintained at 100 per cent of need for those categories consisting predominantly of white persons (OA, AD and AB), but have been reduced by ten per cent for the two groups whose majority consists of non-whites (ADC and HR), the State has, without justification, racially discriminated against its black and Puerto Rican citizens in violation of the Fourteenth Amendment's Equal Protection Clause and Section 2000d of Title 42 of the United States Code.[3]

Mindful of the Supreme Court's caveat noted in Dandridge v. Williams, 397 U.S. 471, 485, n. 17, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970), that a welfare statute or regulation which is "infected with a racially discriminatory purpose or effect" is inherently suspect, we are nevertheless unpersuaded that Chapter 133 is either constitutionally offensive or inconsistent with any provision of the Federal Civil Rights Act. We reach this conclusion not by adopting the State's contention that the Chapter 133 cutback, although concededly racially disproportionate in effect, is specifically authorized by the Supreme Court's holdings in Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and Dandridge v. Williams, *supra*; rather, for reasons to be noted

*infra,* we find ample justification for the challenged legislation. Admittedly both *Rosado* and *Dandridge* suggest that a state should be permitted to adjust its welfare expenditures in order to accommodate budget and fiscal realities, and that federal courts should be reluctant to interfere with the state's difficult task of allocating limited funds among numerous potential recipients; it by no means follows, however, that in the area of welfare expenditures and reductions the states enjoy a legislative carte blanche. *See* Dandridge v. Williams, *supra,* 397 U.S. at 483, 90 S.Ct. 1153; Rosado v. Wyman, 397 U.S. at 420, 90 S.Ct. 1207.

Section 207 of the New York Social Services Law specifically provides:

"Declaration of object;  *  *  *

1. Assistance of aged persons who are in need is hereby declared to be a *special matter of state concern* and a *necessity in promoting the public health and welfare.*" (Emphasis added.)

Sections 283 and 300 of the Social Services Law announce an essentially identical objective with regard to aid to blind and disabled persons, respectively. The absence of any similarly announced state objective in favor of ADC and HR recipients persuades us to view the three uncut categories as separate and distinct from the two groups adversely affected by the Chapter 133 cutback. It further appears that both the HR and ADC statutes contemplate rehabilitation and occupational training for the recipients thereunder. Section 159–a of the Social Services Law specifically includes a provision for the furnishing of occupational training to HR recipients in order that they achieve self-support or increase their earning capacity. Similarly, with

---

2. This is because the ten per cent reduction to HR and ADC beneficiaries in the remaining areas of the State is offset by the increased standard of need.

3. Essentially, the same showing is required to establish a violation of 42 U.S.C. § 2000d as is required to make out a racial discrimination violation of the Fourteenth Amendment's Equal Protection Clause. Ward v. Winstead, 314 F.Supp. 1225, 1235 (N.D.Miss.1970).

regard to ADC recipients, it has been declared:

> "to be the policy of the state that there be a work incentive program under which individuals receiving aid to dependent children will be furnished incentives, opportunities, and necessary services so that: certain of such individuals will be employed in the regular economy, others will be trained for employment in the regular economy, and others will be able to participate in special work projects, in order to restore the families of such individuals to independence and useful roles in their communities and that such individuals will be able to acquire a sense of dignity, self-worth and confidence flowing from their recognition as wage earning members of society and so that the example of a working adult in such families will have beneficial effects on the children in such families. * * *" N.Y. Soc.Serv.Law § 350–b.

Inherent in what we have just cited and discussed is the legislative determination, obviously made without regard to racial considerations, that HR and ADC recipients are in a better position to become self-sufficient than those beneficiaries under the other three programs. It would therefore seem both constitutionally and statutorily permissible for the State to afford its aged, blind and disabled citizens favored treatment, provided, of course, that no impermissible racial discrimination exists within these categories of needy citizens.

It should further be noted that since the State is faced with an imminent fiscal crisis, and the ADC and HR groups comprise approximately 80 per cent of the State's welfare beneficiaries, it would appear entirely appropriate to cut those categories of persons most able to withstand a reduction, while maintaining the level of payments to those persons who, without regard to race, are presumably physically unable to provide for themselves.

In conclusion, we find both an inherent and announced compelling state interest in maintaining welfare benefits furnished to citizens who are physically unable to provide for themselves while benefits are cut for other needy citizens who are, although socially disadvantaged, at least potentially capable of becoming self-supporting. Equal protection requires equality of treatment among persons similarly situated. Having concluded that the legislature justifiably determined that all public assistance recipients are not similarly situated, we can perceive no violation of the Equal Protection Clause of the Fourteenth Amendment or of Section 2000d of Title 42 of the United States Code.

Accordingly, and for the reasons hereinbefore mentioned, the complaint is dismissed.

So ordered.