Paula CICERO et al., Plaintiffs,

v.

Ennis J. OLGIATI, Individually and as Chairman of the New York State Board of Parole, et al., Defendants.

No. 75 Civ. 2059.

United States District Court, S. D. New York.

Nov. 24, 1976.

David Rudenstine, Project on Sentencing and Parole, New York Civil Liberties Union, New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen., State of New York, New York City, for defendants; Jules E. Orenstein, Asst. Atty. Gen., New York City, of counsel.

LASKER, District Judge.

This class action suit, brought on behalf of prisoners in New York State correctional facilities, challenges N.Y. Correction Law § 213, which sets the standard for parole release decision-making, as unconstitutional under the due process and equal protection clauses of the Fourteenth Amendment. In an earlier opinion, the claim of racial, class and ethnic discrimination was dismissed "unless plaintiffs amend their complaint within thirty days of the filing of this memorandum to set forth facts which support their allegations." 410 F.Supp. 1080, 1099 (S.D.N.Y.1976). In accordance with that directive, plaintiffs amended their complaint to include factual allegations to support their claim of racial and ethnic discrimination.[1] Defendants move to dismiss.[2]

1. The amended complaint contains the following new paragraphs:

"28. Upon information and belief the members of the New York parole board unreasonably and unfairly discriminate among prisoners in the granting and denying of parole because of race and ethnic prejudices.

29. Upon information and belief and as a direct result of defendants' discriminatory policy and practice of granting and denying parole on the basis of racial and ethnic prejudices, as alleged in ¶ 28,

(a) defendants grant, and have so granted for the last several years, parole at a substantially disproportionate lower rate to black and Spanish-surnamed prisoners than to comparable white prisoners;

(b) the median time served and the average time served in prison prior to being paroled by the defendants for the first time for black and Spanish-surnamed prisoners is substantially greater, and has been for the last several years, than the median time served and the average time served in prison prior to being paroled for the first time by comparable white prisoners.

30. Upon information and belief, there are 17,000 prisoners currently under the control and jurisdiction of the New York State Department of Correctional Services. The racial and ethnic breakdown of that population, in percentages, is approximately as follows: whites—30%; blacks—55%; Spanish-surnamed—15%. Upon information and belief, and as a direct result of the allegations in ¶¶ 28 and 29, the numbers of black and Spanish-surnamed individuals as percentages of the total parole population currently under parole officer supervision are disproportionately less by a substantial margin than the numbers of black and Spanish-surnamed individuals as percentages of the total prisoner population under the control and jurisdiction of the New York State Department of Correctional Services. Upon information and belief, a disproportionate ratio as alleged in this paragraph has existed for several years."

\* \* \* \* \* \*

"37. The conduct and practices of the parole board unreasonably and unfairly discriminate among prisoners in the granting and denying of parole because of race and ethnic prejudices and violate the rights of plaintiffs and their class under the equal protection clause of the Fourteenth Amendment to the United States Constitution."

2. Although the defendants state that their motion to dismiss encompasses the entire second amended complaint, their memorandum of law in support of the motion is limited to the sufficiency of the plaintiffs' claim of racial and ethnic discrimination, the only claims which differ from the complaint which was the subject of a prior motion to dismiss. Defendants' motion to dismiss the claims which survived the first motion should have been addressed in a motion for reargument under Rule 9(n) of the rules of this court and have been separately presented and concurrently disposed of in rela-

Defendants first contend that the amended allegation of discrimination is as devoid of facts as the claim which was dismissed by the Court as insufficient. We disagree. In our prior memorandum we recognized the liberal pleading policy established by the Federal Rules of Civil Procedure but held that the plaintiffs' failure to set forth *any* factual allegations did not conform with the requirements of Rule 8. *Id.* at 1096–97. Paragraphs 29 and 30 of the second amended complaint remedy that deficiency by alleging in part that parole is granted "at a substantially disproportionate lower rate to black and Spanish-surnamed prisoners than to comparable white prisoners" (¶ 29(a)); and that "the numbers of black and Spanish-surnamed individuals as percentages of the total parole population . . . are disproportionately less by a substantial margin than the numbers of black and Spanish-surnamed individuals as percentages of the total prison population" (¶ 30). Although actual numbers as distinct from comparisons may be required to prove their claim at trial, plaintiffs' factual allegations are sufficiently specific to satisfy the standard in Rule 8. See *Holmes v. New York City Housing Authority*, 398 F.2d 262, 265 (2d Cir. 1968). Indeed, it is understandable that plaintiffs are unable to produce precise figures prior to discovery because defendants control the parole files which contain this information and this material has never been made public.

■ To survive a motion to dismiss a complaint need not plead facts in the detail demanded by defendants. As stated in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957):

"In appraising the sufficiency of the complaint . . . the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."

■ The complaint is surely adequate to fulfill its chief office; that is to give notice to the defendants of the nature and scope of the claim. If the complaint is not factually supported, "discovery, pretrial and summary judgment procedures are the vehicles employed today to achieve prompt disposition of meritless claims." *Reed v. Board of Education of the Parkway School District*, 460 F.2d 824, 826 (8th Cir. 1972).

Defendants argue further that even if the factual allegations are accepted as sufficient, the recent Supreme Court decision in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) requires dismissal of the discrimination claim. In *Davis*, the Supreme Court held that proof of a racially discriminatory purpose is necessary to trigger the strict scrutiny test in a case arising under the Fourteenth and Fifth Amendments. The holding in *Davis* does not defeat plaintiffs' claim on a motion to dismiss. *Davis* involved an appeal from the reversal of a grant of summary judgment, not a motion to dismiss. Plaintiffs in this case need not prove discriminatory purpose at this juncture; in order to survive a motion to dismiss, such a purpose need only be alleged. Paragraphs 28 and 37 satisfy plaintiffs' claim that the Parole Board has a "policy and practice" of discrimination. As plaintiffs point out, Black's Law Dictionary defines "policy" as:

"[t]he general principles by which a government is guided in its management of public affairs . . . [A]s applied to a law, ordinance or rule of law, [policy] denotes its general *purpose* or tendency considered as directed to the welfare or prosperity of the state or community." (p. 1317) (emphasis added)

Thus, the complaint alleges a discriminatory purpose.

■ Moreover, *Davis* did not hold that failure to prove a discriminatory purpose automatically precludes a plaintiff from making his case, but rather that the stan-

tion to defendants' motion under 28 U.S.C. § 1292(b). Since the time has long expired for making a motion to reargue this memorandum is addressed only to the sufficiency of the new paragraphs.

dard by which the alleged discrimination is to be tested varies depending on the presence or absence of proof of discriminatory intent. 426 U.S. at 239–242, 96 S.Ct. 2040. Without evidence of an invidious purpose, a state need only demonstrate that its statute has a "rational relationship" to a legitimate legislative goal; if racially discriminatory intent is established, however, the defendants must show that the statute is justified by a "compelling state interest." As Judge Weinfeld has noted in *Child v. Beame*, 412 F.Supp. 593, 75 Civ. 336 (S.D.N.Y.1976), "the applicable standard—a 'compelling state interest' or a 'rational relationship'— [to apply to a Fourteenth Amendment claim] [is] not [a] proper question on a motion to dismiss." 412 F.Supp. at p. 609.

The factual allegations here as to the disproportionate impact of the application of the statute and regulations continue to be relevant under *Davis*. It is true that the *Davis* Court stated that "a law or other official act" does not reflect a racially discriminatory purpose "*solely* because it has a racially disproportionate impact." *Id. Accord, Lane v. Inman*, 509 F.2d 184, 186 (5th Cir. 1975). However, it also cited with approval the statement in *Akins v. Texas*, 325 U.S. 398, 403–04, 65 S.Ct. 1276, 1279, 89 L.Ed. 1692 (1945) that while

"A purpose to discriminate must be present [it] may be proven by systematic exclusion . . . of the proscribed race or by an unequal application of the law to such an extent as to show intentional discrimination." *Id.*,

and the Court added:

"Necessarily, an invidious discriminatory purpose may often be inferred from the totality of the relevant facts, including the fact, if it is true, that the law bears more heavily on one race than another." *Id.*

Thus, the factual allegations contained in plaintiffs' complaint, when added to the alleged existence of "race and ethnic prejudices" on the part of members of the Parole Board (¶ 28), do not fail to state a claim of racial and ethnic discrimination.

The motion to dismiss the second amended complaint is denied.

It is so ordered.