Shirley **WILDER**, Thomas Edwards, and Sharon Rodwell,

and

Barry Parker, by his mother and next friend, Madeline Butler; Robin Herbert, by her mother and next friend, Nancy Herbert; Shedrick Roberts, by his mother and next friend, Annie Roberts; and Christopher Torian, by his mother and next friend, Lillian Torian, on their own behalf and on behalf of all others similarly situated,

and

Dr. Kenneth Clark; Rev. Howard Moody; Dr. Richard Cloward; and Mildred Davis, Plaintiffs,

v.

Blanche **BERNSTEIN**, individually and as Administrator of the New York City Human Resources Administration; Barbara Blum, individually and as Commissioner of the New York State Department of Social Services; Beverly Sanders, individually and as Administrator of Special Services for Children; Carol Parry; Elizabeth Beine; Linda Marino, individually and as Director of the Office of Allocations and Accountability of Special Services for Children; Arthur Levitt, as Comptroller of the State of New York; Harrison Goldin, as Comptroller of the City of New York; Paula Rabinow, individually and as Director of the Joint Planning Service; Sandra Howard, individually and as Supervisor of the Central Referral Unit; Sister Mary Francene, individually and as Administrator of the Angel Guardian Home; Sister Sheila, individually and as Executive Administrator of Astor Home for Children; Fred Apers, individually and as Executive Director of Cardinal Hayes Home for Children; John DeMartino, individually and as Executive Director of Cardinal McCloskey School and Home for Children; James P. O'Neill, individually and as Executive Director of Catholic Guardian Society; Catherine White, individually and as Di-

rector of Catholic Guardian Society of the Diocese of Brooklyn; Sister Una McCormack, individually and as Executive Director of Catholic Home Bureau for Dependent Children; Dr. Jerome Goldsmith, individually and as Executive Director of Jewish Board of Guardians; Abe Lavine, individually and as Executive Vice President of Jewish Child Care Association of New York; Jacob Trobe; Brother Brendan Breen, individually and as Administrator of Lincoln Hall; Brother Christopher Foley; Ralph Chillion, individually and as Director of Little Flower Children's Services; Sister Rosalie McNaughton, individually and as Executive Director of McMahon Services for Children; Sister Mary James, individually and as Administrator of Madonna Heights School for Girls; Kenneth Miller, individually and as Director of Maimonides Residential Centers; Isaac Maizes; Sister Mary Chrysostom, individually and as Administrator of Mercy Home for Children; Bathsheva Mandel, individually and as Director of Mishkon B'Nai Y'Israel; Monsignor Edmund F. Fogarty, individually and as Executive Director of Mission of the Immaculate Virgin; Sister Marian Cecilia Schneider, individually and as Executive Director of New York Foundling Hospital; Lester Kaufman, individually and as Executive Director of Ohel Children's Home; Hugh Wallace, individually and as Residence Director of Pius XII School; Brother Robert Fontaine; Denis Barry, individually and as Executive Director of St. Agatha Home for Children; Rosemary A. Sheridan, individually and as Executive Director of St. Cabrini Home, Inc.; Robert J. McMahon, individually and as Executive Director of St. Christopher's Home; Sister Mary Patrick, individually and as Executive Director of St. Dominic's Home; Sister Mary Sheila, individually and as Director of St. Germaine's Home; Brother Thomas Trager, individually and as Executive Director of St. John's Residence and School for Boys; Sister Rita Meaney, individually and as Administrator of St. Joseph's Children's Services; Sister Marita Paul, individually and as Executive Director of St. Joseph's Home of Peekskill; Sister Mary Olivia, individually and as Administrator of St. Mary of the Angels Home; Emanuel J. Starace, individually and as Executive Director of St. Michael's Home; Sister Della Mae Quinn, R.S.M.; Rev. Robert M. Harris, individually and as Administrator of St. Vincent's Hall; Joseph Altheimer, individually and as Administrator of Sisters of the Good Shepherd Residences, Defendants.

No. 78 Civ. 957.

United States District Court,
S. D. New York.

Oct. 1, 1980.

Children's Rights Project, New York Civil Liberties Union, New York City, for plaintiffs; Marcia Robinson Lowry, New York City, of counsel.

Davis, Polk & Wardwell, New York City, for defendants Howard, Francene, Sheila, Apers, O'Neill, White, McCormack, Breen, Chillion, McNaughton, James, Chrysostom, Fogarty, Wallace, McMahon, Mary Sheila, Trager, Meaney, Olivia, Harris and Altheimer; Richard E. Nolan, Alfred E. Schretter, Thomas J. Aquilino, Jr., New York City, of counsel.

Robert Abrams, Atty. Gen. of the State of New York, New York City, for defendants Blum and Levitt; Judith T. Kramer, Asst. Atty. Gen., New York City, of counsel.

Allen G. Schwartz, Corp. Counsel of the City of New York, New York City, for defendants Bernstein, Sanders, Parry, Marino and Goldin; James G. Greilsheimer, First Asst. Corp. Counsel, Lorna Bade Goodman, Asst. Corp. Counsel, New York City, of counsel.

Robinson, Silverman, Pearce, Aronsohn & Berman, New York City, for defendant Goldsmith and Co–Counsel to defendant Rabinow; Michael N. Rosen, Floran L. Fink, New York City, of counsel.

Bodell & Magovern, P. C., New York City, for defendants DeMartino, Lavine, Schneider, Barry, Sheridan, Paul, Starace and Rabinow; Gerald E. Bodell, Leonard F. Manning, New York City, of counsel.

Fox & Meyer, New York City, for defendant Miller; Jay Fox, New York City, of counsel.

Hale & Russell, New York City, for defendant Sister Mary Patrick; John P. Hale, New York City, of counsel.

Harold A. Horowitz, New York City, for defendant Mandel.

Feder, Kaszovitz & Weber, New York City, for defendant Kaufman; Marcel Weber, New York City, of counsel.

## OPINION

ROBERT J. WARD, District Judge.

This is a civil action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 28 U.S.C. §§ 2201, 2202, seeking damages and declaratory and injunctive relief against the New York statutory scheme for the provision of child–care services. In this action brought on behalf of all black Protestant[1] children presently in need of child–care services and on behalf of several New York taxpayers, plaintiffs challenge the statutes, both on their face and as applied, and the operation of the New York City child–care system on the grounds that they violate the establishment and free exercise clauses of the first amendment, the equal protection and due process clauses of the fourteenth amendment, and Title VI of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000d–2000d–4. Jurisdiction is asserted under 28 U.S.C. §§ 1343(3) & 1331(a).

Presently before the Court are defendants' motions, pursuant to Rule 12(b)(6), Fed.R.Civ.P., to dismiss plaintiffs' second amended complaint for failure to state a claim upon which relief may be granted and plaintiffs' motion, pursuant to Rule 23, Fed. R.Civ.P., for an order certifying this suit as a class action. For the reasons set forth below defendants' motions are granted in part and denied in part, and plaintiffs' motion is granted.

---

1. For the purposes of this opinion, the term "Protestant" is meant to refer to those children who are of neither the Catholic nor the Jewish faiths.

## Factual Background

More than seven years ago, on June 14, 1973, six named children, for whom guardians *ad litem* had been appointed, commenced an action against the child–care agencies and the public officials responsible for the care of New York City children, asserting that the statutory scheme for the provision of child–care services, and the manner in which those services were provided, violated the first, eighth and fourteenth amendments, and resulted in racial and religious discrimination in the access to these services. Complaint, *Wilder v. Sugarman*, 73 Civ. 2644 (S.D.N.Y., filed June 14, 1973) ("*Wilder I*"). In addition to seeking a declaration that the New York constitutional and statutory provisions violated the Constitution and an injunction against the continued enforcement of these provisions, the *Wilder I* plaintiffs sought consequential and punitive damages from the public officials and the heads of the child–care agencies. On September 21, 1973, the judge to whom the case had originally been assigned granted the *Wilder I* plaintiffs' motion to convene a three–judge court pursuant to 28 U.S.C. §§ 2281 & 2283. Subsequently, on June 4, 1974, the three–judge court decided, on its own initiative, to take under advisement, prior to the completion of discovery, the *Wilder I* plaintiffs' allegations that the constitutional and statutory provisions of state–wide application[2] facially violated the establishment clause of the first amendment. A pre–trial order was entered on June 7, 1974 defining the issue before the court as:

> [w]hether New York Social Services Law § 373(1), (2) and (5), New York State Constitution Article 6, § 32, Family Court Act § 116(a), New York Social Services Law § 153 and New York Constitution Article 7, § 8(2) violate the Establishment Clause of the First Amendment to the Constitution of the United States on their face. . . .

and further directing that, for purposes of that portion of the case, the only facts to be considered would be those admitted by all parties in their answers and those which were properly the subject of judicial notice.

After hearing oral argument and reviewing the parties' submissions, the *Wilder I* court rendered its decision on the narrow issue it had framed in a *per curiam* opinion dated November 19, 1974.[3] It held that the New York laws challenged by the *Wilder I* plaintiffs represented "on their face a fair and reasonable accommodation between the Establishment and Free Exercise Clauses of the Constitution." *Wilder v. Sugarman*, 385 F.Supp. 1013, 1029 (S.D.N.Y.1974) (three–judge court). In concluding its opinion the panel expressly stated that it was leaving, for further proceedings, other questions presented by the pleadings, including whether one or more of the New York constitutional or statutory sections, as implemented, deprived the plaintiffs of their first amendment or other federal constitutional rights. *Id.* The *Wilder I* plaintiffs moved for reconsideration and, on October 16, 1975, the court denied the motion.

On March 3, 1978, after extensive discovery had taken place in *Wilder I* and after motions for partial summary judgment by defendants and for class action certification by plaintiffs had been made, the action presently before the Court ("*Wilder II*") was commenced by the New York Civil Liberties Union, co–counsel for the plaintiffs in *Wilder I*. In the original complaint in the instant action, two black children in need of child–care services, appearing by their mothers and next friends, joined with four New York taxpayers to challenge the religiously based New York child–care system and the laws upon which it is based. The complaint was subsequent-

---

2. The pleadings in *Wilder I* had also challenged a local ordinance, New York City Administrative Code, Chapter 24, Title 603–6.0, insofar as it allegedly authorized the defendant child–care agency administrators named in that suit to practice religious discrimination. This provi-sion was not explicitly considered by the *Wilder I* panel.

3. *Wilder v. Sugarman*, 385 F.Supp. 1013 (S.D.N.Y.1974) (three–judge court). Complete familiarity with the opinion in *Wilder I* is assumed.

ly amended twice, on April 17, 1978 and again on November 16, 1978, to add two additional children as plaintiffs, additional defendants and three additional adult plaintiffs who had formerly been in need of child–care placement. After the *Wilder I* action was reassigned to this Court and after the complaint in the instant action had been filed, the troublesome procedural posture of *Wilder I* became apparent. Upon the Court's suggestion an order was submitted by the parties and signed on June 2, 1978 dismissing *Wilder I* without prejudice, under certain stated conditions.[4]

Plaintiffs in the instant action challenge, as did the plaintiffs in *Wilder I,* the religious matching provisions [5] and the related funding provisions [6] of the New York State Constitution, Social Services Law and Family Court Act, on their face and as applied, as violating the establishment and free exercise clauses of the first amendment. They also assert that the challenged laws and defendants' practices in providing child–care services necessarily result in a mandatory preference for religiously based (as opposed to nonsectarian) services,[7] infringement of the free exercise rights of black Protestant and other children, unequal access to services for black Protestant children, the favoring of religion over non–religion,[8] and racial and religious discrimination and segregation in child–care services.

### Discussion

The motions to dismiss presently before the Court are premised upon several grounds. Initially, defendants seek dismissal of all the second amended complaint's allegations that the New York constitutional and statutory provisions governing New York City's child–care system are unconstitutional on their face. Defendants base this branch of their motions upon the decision of the three–judge court in *Wilder I, supra,* 385 F.Supp. 1013, which was adopted by this Court pursuant to paragraph 2 of its order of June 2, 1978, dismissing *Wilder I* without prejudice upon conditions.[9] Defendants also seek a dismissal of all allegations of racial and religious discrimination against the individual defendants on the ground that the second amended complaint fails to state that any of them purposefully and intentionally discriminated against plaintiffs. Finally, defendants urge the dismissal of the taxpayer plaintiffs' claims on the grounds that the issue they raise has already been adversely decided by the three–judge panel in *Wilder I* and that plaintiffs lack standing to raise claims not decided by *Wilder I.* The Court will address these arguments in turn.

a. *Motions to dismiss first amendment claims*

■ Although plaintiffs concede that the *Wilder I* decision is to be given *stare decisis* effect with respect to those statutes and state constitutional provisions actually ruled on by that court, they argue that it is not dispositive with respect to those statutes which they attack here both on their face and as applied but which were not

---

**4.** Among the stated conditions for the dismissal of *Wilder I* were: (1) that all discovery produced and obtained in *Wilder I* would not be challengeable in the present action solely on the basis that it had not been produced or obtained in the present action; (2) that no final order would be deemed to have been entered with respect to the merits of the *Wilder I* suit; and (3) that the decision and opinion of the three–judge court reported at 385 F.Supp. 1013 (S.D. N.Y.1974) would be adopted by this Court on the basis of *stare decisis.* Order of Dismissal Upon Conditions, *Wilder v. Sugarman,* 73 Civ. 2644(RJW), dated June 2, 1978, ¶¶ 1, 2.

**5.** New York Constitution, Art. VI, § 32; New York Family Court Act, Art. 1, Part I, § 116(a);

New York Social Services Law, Art. 6, Title 1, § 373(1), (2) & (5).

**6.** New York Constitution, Art. VII, § 8(2); New York Social Services Law, Art. 5, Title 2, § 153.

**7.** Specifically, plaintiffs challenge New York Social Services Law, Art. 6, Title 1, §§ 374–b, 374–c & Art. 6, Title 2, § 398(6)(g).

**8.** Specifically, plaintiffs challenge New York Social Services Law, Art. 6, Title 1, § 373(7) and New York Family Court Act, Art. 1, Part 1, § 116(g).

**9.** *See* note 4 *supra.*

challenged in the *Wilder I* complaint. Plaintiffs point specifically to New York Social Services Law §§ 373(7), 374–b, 374–c & 398(6)(g), New York Family Court Act §§ 116(g) & 252 and New York City Administrative Code, Chapter 24, Title 603–6.0.[10] The Court is unable to limit the effect of the *Wilder I* decision in the manner plaintiffs urge.

In rendering its decision the three–judge court in *Wilder I* specifically indicated that it was necessary to consider the New York laws governing child care as "one uniform legislative scheme." The court stated:

> In considering the facial constitutionality of New York's laws governing placement of children in foster care, we cannot compartmentalize one or two laws, such as the religious–matching provision, and ignore their close relationship to others, such as the public funding statutes. All are interrelated and to some extent interdependent. Were one to take away the statutes authorizing the public funding of foster care, the religious–matching laws would thereupon be seriously handicapped or largely rendered ineffective, at least insofar as they regulate foster care. The possible vulnerability of the funding statutes under the Establishment Clause, furthermore, turns on the fact that they are relied upon and used to implement the religious–matching laws. The various laws under attack from one uniform legislative scheme designed to enable the state to fulfill its obligation to provide foster care for needy and dependent children, including their essential educational and religious requirements. In construing them we must be guided accordingly.

*Wilder I, supra*, 385 F.Supp. at 1022 (footnotes omitted). This Court is of the view that, while some[11] of the statutes cited by the plaintiffs in this case were not expressly mentioned in the *Wilder I* decision, they all form a part of the statutory scheme which

the *Wilder I* court found constitutionally valid on its face. Section 252 of the Family Court Act, for example, would appear to be a mere counterpart to section 373 of the New York Social Services Law and section 116 of the Family Court Act which were upheld in *Wilder I*. Similarly, sections 374–b, 374–c and 398(6)(g) of the New York Social Services Law would also appear to be part of the same statutory scheme of referring a child, when practicable, to an agency or person of the same religion. Accordingly, the Court finds that to the extent that plaintiffs here challenge, on the ground of facial unconstitutionality, the statutes regulating New York's child–care system their claims are barred by the three–judge court's decision in *Wilder I*.

■ Certain defendants, however, seek dismissal of all of plaintiffs' first amendment claims, both on their face and as applied, based upon the *stare decisis* effect of the *Wilder I* decision. The Court finds no merit to this argument. Although the *Wilder I* court found that the challenged religious matching and reimbursement statutes and constitutional provisions, as written, presented a fair and permissible accommodation between the establishment and free exercise clauses of the first amendment, that court's decision did not dispose of plaintiffs' claims that those laws, as applied by defendants, violated plaintiffs' first amendment rights. Indeed, the court specifically stated:

> We leave to further proceedings in this case other questions presented by the pleadings, including the issue of whether or not one or more of these New York constitutional or statutory sections in their implementation deprive plaintiffs of their First Amendment or other federal Constitutional rights.

*Wilder I, supra*, 385 F.Supp. at 1029.

■ In the Court's view, plaintiffs have stated cognizable claims of first amendment

---

10. Plaintiffs contend that although New York City Administrative Code, Chapter 24, Title 603–6.0 was challenged in the *Wilder I* complaint its validity was not argued before that court nor was it referred to in the court's opinion.

11. The *Wilder I* court's opinion does expressly cite New York Social Services Law § 373(7) and New York Family Court Act § 116(g). 385 F.Supp. at 1018. Any challenge to the facial constitutionality of these provisions is therefore precluded by that decision's *stare decisis* effect in the instant case.

violations by alleging that defendants, acting under the statutes upheld on their face in *Wilder I*, are nevertheless impermissibly involved in the establishment of religion and are violating the free exercise rights of plaintiffs, inasmuch as: (1) the governmental purpose behind the statutory scheme and the primary effect of defendants' implementation of this scheme is to advance religion and to favor some religions over others, and religion over non–religion; (2) the government is excessively involved and entangled with religion; (3) defendants' actions under the statutes give rise to and intensify political fragmentation and divisiveness along religious lines; and (4) defendants' actions and practices result in governmental financing and subsidizing of agencies and institutions which are sectarian in nature, are controlled by religious organizations or individuals responsible to religious organizations and discriminate in admissions and employment in favor of their own faith.[12] *See Committee for Public Education & Religious Liberty v. Regan*, 444 U.S. 646, 100 S.Ct. 840, 63 L.Ed.2d 94 (1980); *Wolman v. Walter*, 433 U.S. 229, 97 S.Ct. 2593, 53 L.Ed.2d 714 (1977); *Meek v. Pittenger*, 421 U.S. 349, 95 S.Ct. 1753, 44 L.Ed.2d 217 (1975); *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971); *Committee for Public Education & Religious Liberty v. Nyquist*, 413 U.S. 756, 93 S.Ct. 2955, 37 L.Ed.2d 948 (1973); *Levitt v. Committee for Public Education*, 413 U.S. 472, 93 S.Ct. 2814, 37 L.Ed.2d 736 (1973); *Board of Education v. Allen*, 392 U.S. 236, 88 S.Ct. 1923, 20 L.Ed.2d 1060 (1968).

■ Plaintiffs have also stated a claim for relief under the first and fourteenth amendments by alleging that defendants' practices, under the statutes upheld as written, impose a burden upon the free exercise rights of all Protestant children insofar as they condition the availability of specialized child–care services for Protestant children upon acceptance of placement in a sectarian Catholic or Jewish child–care agency and necessarily result in denial of equal access to services for black Protestant children.[13] *See McDaniel v. Paty*, 435 U.S. 618, 98 S.Ct. 1322, 55 L.Ed.2d 593 (1978); *Norwood v. Harrison*, 413 U.S. 455, 93 S.Ct. 2804, 37 L.Ed.2d 723 (1973); *Walz v. Tax Commission*, 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970); *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Whether plaintiffs will be able to prove these sweeping allegations at trial is not a proper question to consider upon the instant motion to dismiss.

b. *Motions to dismiss racial and religious discrimination claims*

■ Turning next to defendants' motions to dismiss plaintiffs' claims of racial and religious discrimination, the Court notes that it is well settled that the purpose of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support [of it.]" *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). As stated in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957):

> In appraising the sufficiency of the complaint ... the accepted rule [is] that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*See generally* 2A *Moore's Federal Practice* ¶ 12.08 (2d ed. 1979); 5 C. Wright & A. Miller, *Federal Practice and Procedure, Civil* § 1357 (1969). Moreover, in ruling on a motion to dismiss for failure to state a claim, a court must treat all the allegations of the complaint as true. *Miree v. DeKalb County*, 433 U.S. 25, 27 n.2, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977). Finally, a court must be mindful that under the liberal pleading policy embodied in Rule 8, Fed.R.Civ.P., plaintiffs need only set forth their claim in a short and concise statement detailed to

---

**12.** Second Amended Complaint, ¶ 209.

**13.** Second Amended Complaint, ¶¶ 210, 211.

the extent necessary to give defendants notice and the opportunity to respond.[14]

■ In their second amended complaint plaintiffs assert: (1) that they were denied appropriate placement because they are black and Protestant;[15] (2) that the defendant public officials engage in and have actual knowledge of practices by which black Protestant children are denied equal access to services and receive segregated services;[16] (3) that the defendant agency administrators engage in a policy, pattern and practice of religious discrimination in admissions decisions;[17] and (4) that defendants' actions, in interpreting and implementing the challenged laws, necessarily and foreseeably result in racial and religious discrimination.[18] In addition, five defendants are charged with engaging in a policy, pattern, custom and practice of discriminating in favor of white children in their admission decisions.[19] The Court finds these allegations sufficiently specific to withstand defendants' motions to dismiss. Although somewhat general, plaintiffs' allegations are surely adequate to fulfill their chief purpose, to apprise defendants of the nature and scope of plaintiffs' claims. *See Friedlander v. Cimino*, 520 F.2d 318, 320 (2d Cir. 1975) (per curiam); *Cicero v. Olgiati*, 426 F.Supp. 1210, 1212 (S.D.N.Y.1976).

■ The Court is unpersuaded by defendants' further argument that under the Supreme Court's decisions in *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976), and *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977), plaintiffs' claims of racial discrimination in violation of the fourteenth amendment's equal protection clause must be dismissed. In *Davis* the Supreme Court held that proof of a racially discriminatory purpose or motive is necessary to trigger the strict scrutiny test in a case arising under the fourteenth and fifth amendments. The Court in *Arlington Heights* reiterated this ruling that proof of racially discriminatory intent or purpose is required to show a violation of the equal protection clause. Neither of these holdings, however, defeats plaintiffs' racial discrimination claim on a motion to dismiss. Plaintiffs need not prove discriminatory intent in order to survive a motion to dismiss; they need only allege it. *Cicero v. Olgiati, supra*, 426 F.Supp. at 1212. Indeed, *Davis* reached the Supreme Court on an appeal from the reversal of a grant of summary judgment; *Arlington Heights* was presented to the Court on an appeal from the reversal of a judgment after trial.

■ In their second amended complaint plaintiffs allege that all defendants have engaged in actions, patterns and practices which result in discrimination against black Protestant children, that all defendant public officials with responsibility to provide appropriate services for all children have had actual knowledge that black Protestant children have been disproportionately denied access to such services,[20] that all defendant agency administrators have discriminated on the basis of religion,[21] and that certain defendant agency administrators have additionally discriminated on the basis

---

14. The Court finds no merit to defendants' intimation that insofar as the instant action is a successor to *Wilder I* and plaintiffs have had extensive discovery of the facts underlying the claims asserted in that action and reasserted here they should have availed themselves of these facts and refined their complaint allegations. There is no special exception to federal rules governing pleadings in "successor actions." Indeed, the pleading of evidence in a prolix complaint is not only unnecessary, but in violation of proper pleading procedures. *See* 2A *Moore's Federal Practice* ¶ 8.13, at 8–112 (2d ed. 1979) and cases cited therein.

15. Second Amended Complaint ¶¶ 73–74, 85–86, 91–92, 100, 105–09, 117, 135, 138, 148–49, & 158–59.

16. Second Amended Complaint ¶¶ 47, 212.

17. Second Amended Complaint ¶ 56.

18. Second Amended Complaint ¶ 210.

19. Second Amended Complaint ¶ 57.

20. Second Amended Complaint ¶ 47.

21. Second Amended Complaint ¶ 56.

of race.[22] Construing the complaint liberally, the Court finds these allegations sufficient to state a claim of purposeful racial and religious discrimination under existing law.[23]

### c. Motions to dismiss taxpayer plaintiffs' claims

Several defendants have also moved to dismiss the claims of taxpayer plaintiffs Clark, Moody, Cloward and Davis on the ground that they lack standing to challenge New York's child placement system. Plaintiffs contend that they satisfy the test for standing set forth in *Flast v. Cohen*, 392 U.S. 83, 102–103, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947 (1968), inasmuch as they challenge New York State and New York City appropriation statutes and the expenditure of federal funds to maintain sectarian child–care agencies allegedly in violation of the establishment clause of the first amendment. They also assert that they satisfy the more general standing requirement of Article III insofar as they allege that they have suffered injury to their conscience which, although non–economic in nature, particularizes plaintiffs' claims and constitutes sufficient "injury in fact" to confer standing to sue.[24] *Association of Data Processing Service Organizations, Inc. v. Camp*, 397 U.S. 150, 152, 90 S.Ct. 827, 829, 25 L.Ed.2d 184 (1970).

The Supreme Court in *Flast v. Cohen, supra*, 392 U.S. at 102–103, 88 S.Ct. at 1954, set forth the specific requirements for federal[25] taxpayer standing:

First, the taxpayer must establish a logical link between that status and the type of legislative enactment attacked. Thus, a taxpayer will be a proper party to allege the unconstitutionality only of exercises of congressional power under the taxing and spending clause of Art. I, § 8, of the Constitution. It will not be sufficient to allege an incidental expenditure of tax funds in the administration of an essentially regulatory statute. ... Secondly, the taxpayer must establish a nexus between that status and the precise nature of the constitutional infringement alleged. Under this requirement, the taxpayer must show that the challenged enactment exceeds specific constitutional limitations imposed upon the exercise of the congressional taxing and spending power and not simply that the enactment is generally beyond the powers delegated to Congress by Art. I, § 8. When both nexuses are established, the litigant will have shown a taxpayer's stake in the outcome of the controversy and will be a proper and appropriate party to invoke a federal court's jurisdiction.

The court finds that plaintiffs here have satisfied both of the two–pronged *Flast* criteria for taxpayer standing. To the extent that they challenge the expenditure of a substantial amount of city, state and federal taxes to support a system of services which allegedly is provided in such a way as to violate both the establishment and free exercise clause of the first amendment as well as the equal protection clause of the fourteenth amendment, they have established a logical nexus between their status as taxpayers and the statutes being attacked. Moreover, although the various funding statutes are part of a "uniform legislative scheme designed to enable the state to fulfill its obligations to provide foster care for needy and dependent children," *Wilder v. Sugarman, supra*, 385

---

**22.** Second Amended Complaint ¶ 57.

**23.** It necessarily follows that plaintiffs' claim under 42 U.S.C. § 2000d, which is based upon the same allegations, is also sufficient to withstand defendants' Rule 12(b) motions. *Child v. Beame*, 412 F.Supp. 593, 609 (S.D.N.Y.1976); *Goodwin v. Wyman*, 330 F.Supp. 1038, 1040 (S.D.N.Y.1971), *aff'd*, 406 U.S. 964, 92 S.Ct. 2420, 32 L.Ed.2d 664 (1972).

**24.** Second Amended Complaint ¶¶ 22, 23.

**25.** Although plaintiffs here challenge city, state and federal expenditures, their standing to sue as taxpayers is to be assessed by the standard for federal taxpayers set forth in *Flast. See, e. g., Korioth v. Briscoe*, 523 F.2d 1271, 1277 n. 16 (5th Cir. 1975); *DiCenso v. Robinson*, 316 F.Supp. 112, 114 n. 1 (D.R.I.1970) (three–judge court), *aff'd sub nom. Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).

F.Supp. at 1022, the funding provisions can hardly be viewed as merely an "incidental expenditure of tax funds in the administration of an essentially regulatory statute." *Flast v. Cohen, supra.* Finally, insofar as taxpayer plaintiffs have challenged the funding provisions at issue here as violating the establishment clause in their implementation, they have also satisfied the second prong of the *Flast* test. It is well settled that the establishment clause is a "specific constitutional limitation" within the meaning of that decision. *Members of Jamestown School Committee v. Schmidt,* 427 F.Supp. 1338, 1340 (D.R.I.1977); *Wolman v. Essex,* 417 F.Supp. 1113, 1115 (S.D.Ohio 1976) (three–judge court); *Public Funds for Public Schools of New Jersey v. Marburger,* 358 F.Supp. 29, 31–32 (D.N.J.1973) (three–judge court); *DiCenso v. Robinson,* 316 F.Supp. 112 (D.R.I.1970) (three–judge court), aff'd sub nom. *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971).[26] Accordingly, defendants' motion to dismiss the taxpayer plaintiffs' claims for lack of standing is denied.

d. *Plaintiffs' motion to certify a class*

Plaintiffs move for an order allowing this action to be maintained as a class action pursuant to Rules 23(b)(1)(A) and (b)(2), Fed.R.Civ.P., on behalf of themselves and "all those New York City children who are black, and who are Protestant, of other non–Catholic or non–Jewish faiths, or are of no religion, and are in need of child–care services outside their home." [27]

To prevail on their application for class action certification plaintiffs must persuade the Court that the prerequisites of Rule 23(a) are satisfied. Rule 23(a), Fed.R. Civ.P., provides:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Defendants contend that plaintiffs fail to satisfy the requirements of Rule 23(a) on several grounds.

■ Initially, defendants assert that the named plaintiffs do not present "typical" claims as required by Rule 23(a)(3) because each possesses individual problems and particular needs and each is older and possibly more psychologically troubled than other members of the class. The Court finds neither of these points persuasive. There is no requirement that the factual basis for the claims of all members of a purported class be identical. As stated by the district court in *Cottrell v. Virginia Electric & Power Co.,* 62 F.R.D. 516, 520 (E.D.Va.1974):

There are diverse issues of fact in all class actions. The individual members of a class will invariably reach an adversary posture with the defendant in different ways. But Rule 23(a)(3) does not require that the factual background of the named plaintiff's [sic] case be identical with that of other members of the class, but that the disputed issue occupy essentially the same degree of centrality to the named plaintiffs' claim as to that of other members of their purported class.

In the instant case, all the children in plaintiffs' class share several crucial characteristics: They are all children who are in need of placement, they are black, and they are either Protestant or of other non–Catholic or non–Jewish faiths. The individual differences among the plaintiffs and between the plaintiffs and other class members do not affect the plaintiffs' central claim that all members of the class have been denied placement because of their race and religion and not because of their individual circum-

---

**26.** Having found that taxpayer plaintiffs satisfy the narrow *Flast* criteria for standing, the Court need not address the issue whether they have also alleged the type of non–economic injury in fact which would give rise to standing generally.

**27.** Second Amended Complaint ¶ 9.

stances.[28] Nor does the assertion that the named plaintiffs are possibly older and more troubled than other members of the class preclude them in this Court's view, on the grounds of atypicality, from acting as class representative in the instant case.

Similarly unpersuasive is defendants' additional argument, addressed at least in part to the typicality requirement of Rule 23(a)(3) and in part to the adequacy–of–representation requirement of Rule 23(a)(4), that there may be conflicting interests within the class because some children may be happy with the present system, even assuming its discriminatory character. The fact that some members of the class may be personally satisfied with the existing system and may prefer to leave the violation of their rights unremedied is simply not dispositive of a determination under Rule 23(a).[29] *Norwalk C.O.R.E. v. Norwalk Redevelopment Agency*, 395 F.2d 920, 937 (2d Cir. 1968). In sum, the Court finds that plaintiffs satisfy the requirements of typicality and fair representation under Rules 23(a)(3) and (4).[30]

Defendants also oppose class certification on the ground that although the named plaintiff children may have standing to assert claims against those public officials allegedly responsible for improperly administering child–care practices and policies and against those child–care agency officials who allegedly injured the named plaintiffs in some manner, they have no standing through a class action or otherwise to sue defendants who have not been involved with the named plaintiffs. The Court finds no merit to this argument.

Initially, the Court notes that each of the named plaintiffs has standing to assert an establishment clause claim against the directors of all religiously affiliated child–care agencies. Indeed, that very issue was raised and decided in *Wilder I, supra*, 385 F.Supp. at 1017 n. 1. To the extent that defendants argue to the contrary here, their argument must be rejected. Indeed, even if the *Wilder I* court had not disposed of at least part of defendants' standing argument this Court would be reluctant to adopt the narrow standing position defendants have taken. As plaintiffs note, courts have traditionally applied a "broad and accommodating concept of standing in civil rights cases," *La Mar v. H & B Novelty & Loan Co.*, 489 F.2d 461, 469 (9th Cir. 1973), in recognition of the strong public interest in effective enforcement of the civil rights statutes which is not always present in commercial litigation between private parties. Moreover, this distinction between civil rights suits and commercial litigation has often proved critical in considering class action standing. As the court in *La Mar* stated, after noting the absence of any "juridical link" between the defendants before it and the commercial nature of the complaint, "[w]hile Rule 23 has no 'civil rights version', it is not surprising that its interpretation is more generous in this type of case than in others." *La Mar v. H & B Novelty & Loan Co., supra*, 489 F.2d at 469–70. In the Court's view, the proper inquiry upon a motion for class certification

28. Indeed, as plaintiffs point out, class certification was properly granted under somewhat similar circumstances in *Organization of Foster Families for Equality and Reform v. Dumpson*, 418 F.Supp. 277, 278 n. 3 (S.D.N.Y.1976), which also challenged various aspects of New York City's child–care system. *See Smith v. Organization of Foster Families*, 431 U.S. 816, 822 n. 7, 97 S.Ct. 2094, 2098 n. 7, 53 L.Ed.2d 14 (1977).

29. The same reasoning disposes of defendants' related argument that there may be a potential conflict between the taxpayer plaintiffs and members of the proposed class.

30. Defendants' additional argument that class certification in the instant case would present serious problems of manageability is also without merit. Inasmuch as this is a Rule 23(b)(2) class action where there is no provision for absent class members to "opt–out", no guardians *ad litem* need be appointed to protect the interests of the absent minor class members. *See* 7A C. Wright & A. Miller, *Federal Practice and Procedure, Civil* § 1786, at 144 (1972). Similarly, there is no mandatory requirement of individualized notice in (b)(2) class actions. *See Frost v. Weinberger*, 515 F.2d 57, 65 (2d Cir. 1975) (Friendly, J.), *cert. denied*, 424 U.S. 958, 96 S.Ct. 1435, 47 L.Ed.2d 364 (1976); *Sockwell v. Maloney*, 431 F.Supp. 1006, 1010 n. 5 (D.Conn.1976).

in a civil rights action should be, as plaintiffs urge, upon the broader issue of whether plaintiffs are members of the class they seek to represent, and whether the class as a whole has standing to sue the named defendants, rather than upon the narrow question of whether each named plaintiff meets the traditional standing requirements against each named defendant. *See, e. g., Solin v. State University of New York,* 416 F.Supp. 536 (S.D.N.Y.1976); *Ste. Marie v. Eastern Railroad Association,* 72 F.R.D. 443 (S.D.N.Y.1976); *Women's Committee for Equal Employment Opportunity v. National Broadcasting Co., Inc.,* 71 F.R.D. 666 (S.D. N.Y.1976).[31] As the Court noted above, the named plaintiffs present claims typical of the class they seek to represent and thus as a group fall squarely within that class. Moreover, insofar as they allege that the voluntary agencies, acting together with public officials, have created an overall child–care system which discriminates on the basis of race and religion, plaintiffs have stated a claim against the entire system and each of its components. The Court therefore finds that class action certification is appropriate under the circumstances here.

■ There is also no merit to defendants' additional assertion that class action is unnecessary in this case because the defendants as reputable government officials and child–care agency officials would act prospectively toward all children according to the Court's final judgment. It is true that the court in *Galvan v. Levine,* 490 F.2d 1255, 1262 (2d Cir. 1973), *cert. denied,* 417

U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974), approved the denial of class determination where class relief would be "largely a formality" because the State had made clear that it understood the judgment to bind it with respect to all claimants. Indeed even before entry of the judgment, the State in *Galvan* withdrew the challenged policy even more fully than the court ultimately directed and stated it did not intend to reinstate the policy. However, no such showing has been made by defendants here. *See also Lucas v. Wasser,* 73 F.R.D. 361, 363 (S.D.N.Y.1976); *Cicero v. Olgiati,* 410 F.Supp. 1080, 1099 n. 8 (S.D.N. Y.1976); *Echevarria v. Carey,* 402 F.Supp. 183, 189 (S.D.N.Y.1975); *Percy v. Brennan,* 384 F.Supp. 800, 811 (S.D.N.Y.1974). In any event, considerations of judicial economy justify class treatment here to avoid the likelihood of mootness before a final resolution of the merits, irrespective of the character of the defendants. *Greklek v. Toia,* 565 F.2d 1259, 1261 (2d Cir. 1977) (*per curiam*), *cert. denied sub nom. Blum v. Toomey,* 436 U.S. 962, 98 S.Ct. 3081, 57 L.Ed.2d 1128 (1978).

■ Accordingly, plaintiffs' motion for an order certifying this action as a class action is granted. The class certified is defined as "all those New York City children who are black, and who are Protestant, of other non–Catholic or non–Jewish faiths, or are of no religion, and are in need of child–care services outside their home."

### Conclusion

For the reasons stated above, defendants' motions to dismiss are granted with respect

---

**31.** None of the lower court cases relied upon by defendants involved civil rights complaints and none is truly apposite to the class action motion presently before the Court. *See, e. g., Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727 (3d Cir. 1970), *cert. denied,* 401 U.S. 974, 91 S.Ct. 1190, 28 L.Ed.2d 323 (1971) (securities action attempting to combine stockholder derivative class actions under Rule 23.1, Fed.R. Civ.P., with primary class action under Rule 23, Fed.R.Civ.P.); *Weiner v. Bank of King of Prussia,* 358 F.Supp. 684 (E.D.Pa.1973) (banking action attempting to expand private right of action personal to borrower to those without privity); *Leonard v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 64 F.R.D. 432 (S.D.N.Y.1974)

(securities action attempting to expand narrow, statutorily–created private right of action to non–purchasers). Defendants' reliance upon *O'Shea v. Littleton,* 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), and *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), is similarly misplaced. Unlike the plaintiffs here none of the *O'Shea* plaintiffs were members of the class they sought to represent. In *Rizzo* the Supreme Court found after reviewing two extensive trial records that the only constitutional violations found to have been committed were committed by individuals who were not named as parties. The Supreme Court discussion of the standing issue was thus in the context of a reversal on the merits.

to plaintiffs' claims that the constitutional and statutory scheme regulating New York City's child care system violates the establishment clause of the first amendment on its face. Defendants' motions to dismiss are otherwise denied. Plaintiffs' motion for class action certification is granted. Discovery is to be completed by December 31, 1980 and a pre–trial order filed by January 30, 1981.

It is so ordered.