Mario ARTHUR, Harold DePass, Winston Johnson, Ann Long, Joseph Percival, Sarah Richardson, and Vivian Wright, individually and on behalf of all others similarly situated, Plaintiffs,

Diane Herndon, individually and on behalf of all others similarly situated, Plaintiff-Intervenor,

v.

STARRETT CITY ASSOCIATES, Starrett City, Inc., Delmar Management Company, and Richard Berman, Commissioner, State of New York, Division of Housing and Community Renewal, Defendants.

No. 79 CV 3096 (ERN).

United States District Court, E.D. New York.

June 22, 1983.

Karene Ann Freeman, Lawrence M. Grosberg, Fair Housing Clinic, James I. Meyerson, Thomas I. Atkins, Charles E. Carter, National Association for the Advancement of Colored People, New York City, for plaintiffs and plaintiff-intervenor.

Paul, Weiss, Rifkind, Wharton & Garrison by Morris B. Abram, Jack Hassid, Michael G. Carey, New York City, for defendants Starrett City Associates, Starrett City, Inc., and Delmar Management Co.

Robert Abrams, Atty. Gen., State of N.Y. by George D. Zuckerman, Stephen M. Jacoby, Asst. Attys. Gen., New York City, for defendant Berman.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

Starrett City, located on a 153-acre site in Brooklyn, New York, is a private, middle income housing project. Providing 5,581 apartments to approximately 17,000 tenants, the project benefits from State and federal financing subsidies. Starrett City apparently maintains a racial balance in its tenant population by allocating approximately seventy per cent of its available vacancies to majority member, or white, applicants, and the remaining vacancies to minority member applicants. The seven current plaintiffs claim to be middle income blacks who have been notified that they are financially eligible to obtain apartments in Starrett City, but who have instead been placed on lengthy waiting lists. They seek to enjoin the operation of Starrett City's racial quota system, claiming that it violates Title VIII of the Civil Rights Act of 1968, 42 U.S.C. §§ 3601–3631; Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq.; 42 U.S.C. §§ 1981, 1982, & 1983; sections 32 and 602 of the New York State Private Housing Finance Law, and the fourteenth amendment to the Constitution. The specific defendants are Starrett City Associates, a limited partnership that owns and operates Starrett City; Starrett City, Inc., a general partner in Starrett City Associates and a limited profit housing corporation organized under Article II of the Private Housing Finance Law of New York; Delmar Management Company, the managing agent for Starrett City; and Richard Berman, Commissioner of the New York State Division of Housing and Community Renewal.

This matter is presently before the court on plaintiffs' motion to certify a class action

pursuant to Rule 23(a) and (b)(2), F.R. Civ.P., and on motions and cross-motions concerning the continued involvement of the various named plaintiffs. Specifically, two of the original plaintiffs are requesting voluntary discontinuance, Rule 41(a)(2), and one individual is seeking to intervene as a plaintiff, Rule 24(b)(2). Defendants Starrett City Associates, Starrett City, Inc., and Delmar Management Company are moving to dismiss one named plaintiff for failure to participate in discovery, Rule 37(b)(2)(C), and are seeking summary judgment against another named plaintiff, Rule 56, arguing that his action for injunctive relief is moot and he has no realistic damage claim.

Any consideration of class action certification will necessarily involve a discussion of the characteristics and claims of the proposed class representatives. Accordingly, the court will first address the myriad of contentions concerning the present plaintiffs, and resolve the multiple motions which seek to delimit the named parties to this action.

*The Plaintiffs*

The complaint states that Mario Arthur is black, has been notified that he is financially eligible for an apartment in Starrett City, and has never been offered an apartment. The Starrett City housing application requires that an applicant identify his race from the following: White, American Indian, Hispanic, Black, Oriental, and Other. Arthur checked "Other." When questioned by defense counsel at his deposition, Arthur explained that he checked "Other" because he is partially of Haitian descent, was born in Haiti, and obtained American citizenship through naturalization. Defendants' contention, however, that Arthur is not black because he is Haitian is clearly a nonsequitur.

Harold DePass is apparently also black and financially eligible for Starrett City housing. Defendants have moved for summary judgment concerning DePass' claims. They assert by affidavit that he has been offered an apartment, and thus they argue that the requested injunctive relief would be moot as to him. Additionally, defend-

ants cite portions of DePass' deposition in an attempt to show that he has no residual damage claim. Responding to defense counsel's questioning, DePass stated that he sought as damages the difference between the rent and related expenses he was paying while on the Starrett City waiting list, and the rent and related expenses he would have paid for an apartment in Starrett City. Defendants assert that DePass would have paid a higher rent had he been accepted at Starrett City, and thus he suffered no damages.

■ DePass responded by affidavit contradicting defendants' allegations that he had been offered an apartment. He added that he is seeking damages based upon the greater intrinsic value of an apartment in Starrett City, and compensation for alleged emotional distress, humiliation, and lost opportunities. The factual allegations contained in the conflicting affidavits and the lack of clarity in the damage claim amply demonstrate that material factual issues are in dispute, and defendants' summary judgment motion must be denied. *See* Rule 56.

Ann Long apparently is black and has received notice of her eligibility for Starrett City housing. Defendants cite portions of her deposition in an effort to demonstrate that she is not interested in whether Starrett City remains integrated. At best, however, the excerpted testimony exudes confusion over or disagreement with defense counsel's definition of integration. Of greater relevance, nothing submitted by defendants begins to prove that Long is not an active, interested plaintiff.

According to the complaint, Joseph Percival is black. He purportedly applied for an apartment in Starrett City in February 1978. In June 1978, he was informed that his income was too high for him to qualify. When he requested that he be allowed to update his application to reflect that he had recently married and that his wife was pregnant, he was scheduled for a November 1978 appointment. In October 1978, with the assistance of the Open Housing Center, he inquired as to the status of his applica-

tion and was told that no record existed. He reapplied, and was told that the effective date of his application would be February 1978.

Defendants note that Percival, like Arthur, checked "Other" on his application. They additionally supply this portion of his deposition testimony:

" 'Q. What do you consider your race to be?

A. Well, I'm obviously black, but from South America originally, that's—I think what I was going by was the connotation of—it was not even only that, but it was that I was going under the assumption that if I were going to apply for an apartment at Starrett City and not indicating—

Q. Your race?

A. (continuing)—your race, black, that no judgments can be made against me.

Q. Do you think that you would have a better chance to get an apartment if you indicated your race as "other"?

A. I think so, yes.' "

Defendants' Memorandum in Opposition to Class Certification at 28 (quoting Exhibit M at 16). Defendants then state that "by his own admission, Mr. Percival is from South America and hence Hispanic rather than Black." *Id.* Again, this nonsequitur is patently meritless.

Defendants further attempt to disqualify Percival from eventual class representation by casting him as dishonest. They first rely on his understandable inability to answer properly a question that required him to classify himself as either Hispanic, which reflected his ethnicity, or black, which reflected his race. Moreover, the quoted colloquy demonstrates Percival's awareness and disapproval of the racial quota system rather than his deliberate deception in the application process. Defendants next contend that Percival concealed certain income in an attempt to evade Starrett City's financial eligibility requirements. Percival's deposition and affidavit both demonstrate, however, that he was unaware of Starrett City's exact income qualifications, that his

income fluctuates, and that in good faith he chose to use his base rate income.

Defendants then argue that "[s]ince Mr. Percival does not want to live at Starrett City he has no interest in the type of community it will be and what effect this lawsuit will have on the community." *Id.* at 31. In support, they again quote his deposition:

" 'Q. Do you still want to live in Starrett City?

A. I don't know.

Q. If you were offered an apartment today by Starrett City, to move in within the next few weeks, would you accept it?

A. I don't know. I would have to—I honestly don't know that now.' "

*Id.* at 31 (quoting Exhibit M at 42). At best, Percival expressed doubt as to whether he is presently willing to relocate; this passage does not support the argument that he is no longer interested in housing in Starrett City. Moreover, in a subsequent affidavit, Percival has stated that he would move to Starrett City if offered an apartment.

Vivian Wright and Winston Johnson seek to withdraw from this action with prejudice to their claims. Defendants argue that this motion should be granted only upon the imposition of attorneys' fees and deposition expenses.

Particularly concerned with the voluntary dismissal of Johnson, defendants contend that Johnson was offered an apartment in Starrett City in December 1981. Starrett City's routine credit check determined that he was three months delinquent in his rent payments, which he attributed to an error by his landlord. When he attempted to prove this discrepancy through apparently backdated documentation, defense counsel deposed his landlord. Facing apparent ineligibility for Starrett City housing, Johnson commenced efforts to withdraw.

These contentions do not demonstrate that Johnson had no claim at the inception of this litigation, only that changed circumstances convinced him that he should not press his case. The added expenses in-

curred in ascertaining whether Johnson was eligible for Starrett City housing two years after he filed this complaint relate principally to the operation of Starrett City and not to the litigation of this action. No allegation whatsoever is made that Wright joined this action in bad faith, or that her actions gave rise to any unreasonable costs.

■ The burdens of lengthy litigation, changes in circumstance, and other effects of time may reasonably persuade a plaintiff to discontinue a claim he or she once believed valid and worth prosecuting. This option should exist without the penalty of the imposition of a defendant's litigation expenses. Moreover, the costs of determining whether plaintiffs have a meritorious claim is a price generally borne by defendants in our legal system. *See Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Louis v. Bache Group, Inc.,* 92 F.R.D. 459, 461 (S.D.N.Y.1981). Wright and Johnson's claims are accordingly dismissed pursuant to Rule 41(a)(2), with prejudice but without an award of defendants' fees and expenses.

■ Sarah Richardson failed to appear for her scheduled deposition and cannot be located by either her own attorneys or defense counsel. Accordingly, defendants' unopposed motion to dismiss Richardson's claims pursuant to Rule 37(b)(2)(C) and (d) is granted.

Diane Herndon seeks to intervene as a plaintiff in this action. Her affidavit states that she is black and that she applied and was notified of her eligibility for an apartment in Starrett City. She believes that she has yet to receive an apartment because she is black and she objects to Starrett City's quota system. She seeks to pursue injunctive relief on behalf of the putative class, as well as to recover personal monetary damages.

■ Rule 24(b)(2) permits timely intervention by a movant whose claims share with the main action a common question of law or fact. The rule further requires that the court consider "whether the interven-

tion will unduly delay or prejudice the adjudication of the rights of the original parties." Herndon's motion to intervene, made prior to class certification, states essentially the same factual and legal allegations as the original complaint. Moreover, defendants cite no possible resultant delay or prejudice, and the court finds none. Finally, granting Herndon's intervention motion ensures the availability of an apparently well-qualified class representative. Herndon's motion is accordingly granted. *See, e.g., Rivers v. Califano,* 86 F.R.D. 41, 44, 46 (S.D.N.Y.1981).

*Class Certification*

■ For the reasons that follow, the court certifies a class comprised of all blacks who have submitted apartment applications at Starrett City and were informed that they were financially eligible but have allegedly been maintained on the waiting lists due to the operation of Starrett City's racial quota system.

Rule 23(a) establishes the preliminary criteria essential to the maintenance of a class action:

"(1) the class is so numerous that joinder of all members is impracticable,

(2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and

(4) the representative parties will fairly and adequately protect the interests of the class."

Starrett City's waiting lists and its records indicating the race of the applicants on that list are documents within defendants' control. Plaintiffs thus cannot provide the exact number of possible class members. By reasonable estimates, the class appears to include at least three thousand members, a number well outside practicable joinder. The size of the class does not, however, raise any question that it is too amorphous for class maintenance; the records do exist to ascertain the specific class members. Finally, names are assumedly added to and removed from the list routinely. This fluc-

tuating nature of the pool of prospective plaintiffs further demonstrates the impracticability of joinder. Thus the numerosity requirement is met. *E.g., Folsom v. Blum,* 87 F.R.D. 443, 445–46 (S.D.N.Y.1980); *see Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir.1974).

The complaint alleges that Starrett City violates the rights of the named plaintiffs and class members because Starrett City considers race as a criterion in its apartment application and distribution policies, procedures, and practices. Without dispute, the class members' claims present common questions of law and fact. Although the named plaintiffs do assert individual damage claims, the general allegations asserted for injunctive relief demonstrate that the class members' claims necessarily succeed or fail along with the named plaintiffs' claims. The typicality requirement thus is clearly also met. *See, e.g., Norwalk CORE v. Norwalk Redevelopment Agency,* 395 F.2d 920 (2d Cir.1968); *Wilder v. Bernstein,* 499 F.Supp. 980 (S.D.N.Y.1980).

Defendants ardently dispute whether the named plaintiffs can adequately protect the interests of the class. They assert that some members of the class might differ with the objectives of this litigation, and therefore do not share the interests of the named plaintiffs.

Defendants describe in detail an opinion survey taken of the black tenants in Starrett City. The survey purportedly shows that a majority of the black tenants believe that residing in an integrated community is at least "somewhat important," and that one-third of those surveyed would try to move if the minority population at Starrett City increased significantly. Through a statistical analysis and sociological arguments, defendants contend that the demise of the Starrett City quota system will result in a significantly greater black population. Defendants also state that forty-five percent of the surveyed black tenants agree that Starrett City's management should maintain the integration of the community by regulating the selection of tenants by race. *See* Defendants' Memorandum in Opposition to Class Certification at 14–26.

Current tenants of Starrett City are not parties to this action; defendants have not come forward with any evidence of the views of the class members. As residents of Starrett City, current tenants most likely have concerns that are different from the concerns of the class members, who desire and have been unable to obtain housing in Starrett City. Moreover, the individuals responding to defendants' survey do not presently suffer the injuries asserted by the plaintiffs on behalf of the class.

■ Central to this action is the issue of whether defendants' actions violate a common legal right shared by the class members. All members of the class and the class representatives have the same legal interest in this action, and they necessarily must rely on similar facts to vindicate a common legal right. Some members of the class may personally view Starrett City's alleged violative conduct with apathy or even approval; nonetheless, a potential conflict in the opinions of class members will not defeat a class certification if the claims, defenses, and legal interests asserted by the named representatives will adequately protect the legal rights of the class.

For example, in *Griffin v. Burns,* 570 F.2d 1065 (1st Cir.1978), the named plaintiffs challenged the invalidation of absentee and shut-in ballots and sought to set aside election results. Even though some of the invalidated ballots had been cast in favor of the winning candidate and those voters would presumably have an interest in preserving the original election results, the court upheld the class certification, stating:

> "[N]ot all class members need 'be aggrieved by or desire to challenge defendant's conduct in order for some to seek relief under [23](b)(2).' ... [E]ven persons who supported [the winning candidate] having suffered the loss of their ballots shared with the other class members the legal injury complained of here."

*Id.* at 1073 (quoting 7A Wright and Miller, Federal Practice and Procedure, Civil: § 1775 at 21 (1972)). Similarly, in *Cicero v.*

*Olgiati,* 410 F.Supp. 1080 (S.D.N.Y.1976), plaintiff inmates challenged the facial validity of New York's criteria for parole determinations. Plaintiffs moved to maintain the action as a class of inmates who had been denied parole or who would become eligible for parole consideration. Although the defendants argued that the named plaintiffs were not adequate representatives because "some members of the class are personally satisfied with the Parole Board decisions and may prefer the violation of their rights unremedied," the court granted the motion, finding that "all members suffer in the same way from defendants' practices, [and] common issues predominate." *Id.* at 1098; *accord Norwalk CORE,* 395 F.2d at 937; *Wilder,* 499 F.Supp. at 993.

Attempting to support their argument, defendants rely upon cases which are inapposite. In *East Texas Motor Freight System, Inc. v. Rodriquez,* 431 U.S. 395, 401, 97 S.Ct. 1891, 1895, 52 L.Ed.2d 453 (1977), the Court reversed the Fifth Circuit's decision to certify a class comprised of "all of the company's Negro and Mexican-American city drivers covered by the applicable collective-bargaining agreement for the State of Texas." Among many reasons supporting a finding that plaintiffs were not representative of the proposed class, the Court noted "the conflict between the vote by members of the class rejecting a merger of the city- and line-driver collective-bargaining units, and the demand in plaintiffs' complaint for just such relief." *Id.* at 405, 97 S.Ct. at 1897 (footnote omitted). In *Burns v. United States Postal Service,* 380 F.Supp. 623 (S.D.N.Y.1974), class certification was denied because the remedy sought by named plaintiffs would require the majority of the putative class to pay an increased amount into a retirement fund but would not entitle them to greater benefits. The court concluded that where allegedly invalid action by a government official " 'may be taken as conferring economic benefits or working economic harm ... the foundations of maintenance of a class action are undermined.' " *Id.* at 630. Finally, in *Giordano v. Radio Corporation of America,* 183 F.2d 558, 560 (3d Cir.1950), the named plaintiffs were union officials and members who sought to enjoin their expulsion from the union. Although a majority of the union membership voted to ratify the expulsion, plaintiffs moved for certification of a class comprised of the union members, arguing that the proposed class had been "deprived of their right to the services, experience, and dues of the expelled members." The court denied this motion. Unlike the instant matter, in each of the cases cited by defendants, most of the putative class members had demonstrable views in opposition to the goals of the litigation and colorable legal interests in direct conflict with the named plaintiffs.

The proposed class representatives, Arthur, DePass, Long, Percival, and Herndon, are all blacks who have been notified that they are financially eligible for Starrett City Housing. They all desire apartments in Starrett City; they assert that they have yet to be offered apartments because defendants utilize a racial quota system; and they have joined in this action to redress this alleged discriminatory conduct. They and the class members suffer the same consequences of defendants' actions. All protestations by defendants that any or all of these plaintiffs lack a requisite characteristic or the necessary dedication to press the class interests have been addressed and rejected earlier in this order. These plaintiffs have demonstrated interest in this action sufficient to ensure that they will fairly and adequately protect the interests of the class.

Once the prerequisites of subsection (a) are satisfied, an action may be maintained as a class only if it can be characterized as falling into one of three categories supplied by subsection (b). If plaintiffs prevail, this class will meet the definition of a subsection (b)(2) class, which requires a finding that

"the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

Defendants argue in response that an injunction to any single plaintiff would run to the benefit of the proposed class members, and thus they contend that class certification under subsection (b)(2) is needlessly burdensome and not "superior to other available methods of ... adjudication." Defendants protest too much.

First, the superiority requirement is included only in the definition of a subsection (b)(3) class, which Rule 23 creates disjunctive from the subsection (b)(2) class. Second, defendants themselves demonstrate the necessity for class certification. In their various challenges to the standing or representational qualities of the named plaintiffs, defendants have articulated the many ways in which changing circumstances might render moot or otherwise unenforceable the claims of any or all of the named plaintiffs. Rather than risk the need for eventual substitution of parties or reinstitution of these claims, Rule 23(b)(2) already provides the ideal mechanism for ensuring that the claims in this complaint may ultimately be redressed.

Finally, defendant Berman, Commissioner of the New York State Division of Housing and Community Renewal, raises an additional objection to class certification. Citing extensive support, the Commissioner states that when an action seeks injunctive relief against State officials based upon the unconstitutionality of a statute or administrative practice, class certification is a needlessly burdensome formality and thus inappropriate. *See, e.g., Galvan v. Levine,* 490 F.2d 1255, 1261 (2d Cir.1973), *cert. denied,* 417 U.S. 936, 94 S.Ct. 2652, 41 L.Ed.2d 240 (1974). Without questioning this assertion, the stated principle is inapplicable in this action. First, three of the four named defendants are not State officials, but private entities. Second, as discussed previously, the possibility of mootness or other disqualification of the present plaintiffs demands class certification to protect the claims of the unnamed class members.

Plaintiffs also request certification of a second class, essentially a subclass, including those members of the first class "who also were subject to racially discriminatory treatment by defendants independent of but related to the racial quota." Plaintiffs' Reply Memorandum at 18. Plaintiffs describe this class as including blacks on the waiting lists who "were subjected to racially disparate treatment with respect to some aspect of the overall application process.... [and who were] treated less promptly, less politely and less comprehensively." *Id.*

◼ Plaintiffs' purpose for seeking to maintain this subclass seems to be to vindicate purported disparate treatment of black applicants and white applicants, which plaintiffs portray as an "inevitable outgrowth" of the quota system. As such, this alleged discrimination would have affected most or all of the entire class of blacks on the waiting lists. Additionally, these assertions are better viewed as additional offers of proof as to the allegedly discriminatory conduct of defendants rather than the basis for the maintenance of a subclass. Finally, the proposed class definition is simply too ambiguous to be maintained. Of course, this order is without prejudice to motions to certify any subclasses that may emerge as the case progresses, or to the need, if any, to structure relief specific to individuals or sub-groups within the class.

◼ As their final argument, defendants assert that notice to all class members is mandatory under Rule 23. Subsection (c) specifies notice only in Rule 23(b)(3) class actions, and is inapplicable in this case. Notably, members of a subsection (b)(3) class enjoy the option of requesting exclusion from the action, a choice not available to a subsection (b)(2) class member. *See* Rule 23(c)(3). As a rule, notice need not be given in a subsection (b)(2) class action. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 n. 14, 94 S.Ct. 2140, 2152, n. 14, 40 L.Ed.2d 732 (1974); *Ives v. W.T. Grant Co.,* 522 F.2d 749, 764 (2d Cir.1975); *Lynch v. Household Finance Corp.,* 360 F.Supp. 720, 722 n. 3 (D.Conn.1973) (three-judge court). Although the court may direct notice at any stage in a class action pursuant to the discretionary authority provided in Rule

23(d)(2), no grounds for such action were suggested by the defendants. No notice will be required at this time.

The Clerk of the Court is directed to amend the caption to reflect the action taken herein and to notify counsel for all parties of the scheduled trial date and related deadlines set by this court.

SO ORDERED.