RAY M., a minor under the age 21 years by his mother JUANA D.; Jackey S., a minor under the age 21 years, by his mother Yin Jiang S.; Miguel F., a minor under the age 21 years, by his mother Anatalia F.; Jose P., a minor under the age 21 years, by his mother Evelyn Q.; Katie B., a minor under the age 21 years, by her mother Carrie B.; Angel C., a minor under the age 21 years, by his mother Margarita V.; and Benjamin L., a minor under the age of 21 years, by his mother Angela L.; individually and on behalf of themselves and all other persons similarly situated, Plaintiffs,

v.

BOARD OF EDUCATION OF the CITY SCHOOL DISTRICT OF the CITY OF NEW YORK; Ramon Cortines, Chancellor of the Board of Education of the City School District of the City of New York; Howard S. Tames, Executive Director of the Division of Special Education of the Board of Education of the City School District of the City of New York; New York State Education Department; Thomas Sobol, Commissioner of Education of the State of New York; New York City Transportation Department; and Mario M. Cuomo, Governor of the State of New York, Defendants.

No. CV 94–1103.

United States District Court, E.D. New York.

April 24, 1995.

Davis Polk & Wardwell (Daniel F. Kolb, Sharon Katz, of counsel), Puerto Rican Legal Defense and Educ. Fund (Juan A. Figueroa, Kenneth Kimerling, of counsel), New York City, Advocates for Children of New York, Inc. (Ellen Gallagher Holmes, of counsel), Long Island City, Teitelbaum, Hiller, Rodman, Paden & Hibsher, P.C. (Roger J. Maldonado, of counsel), New York City, for plaintiffs.

Paul A. Crotty, Corp. Counsel of City of New York (Steven J. Rappaport, Robert Bell, of counsel), New York City, for defendants Bd. of Educ. of City School Dist. of City of New York, Ramon Cortines, Howard S. Tames, and New York City Transp. Dept.

Dennis Vacco, Atty. Gen. (Clement J. Colucci, of counsel), New York State Dept. of Law, New York City, for defendants New York State Educ. Dept., Thomas Sobol, and Mario M. Cuomo.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

This case involves disabled preschool children residing in New York City who claim that they have not received an appropriate education as required by federal and state law.

The Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1485 (the Act), mandates that states receiving federal aid develop a plan to provide a free appropriate spe-

cial education to all disabled students between the ages of three and twenty-one. Under the Act, New York State must (1) provide adequate personnel properly to evaluate and place students, (2) educate disabled children with non-disabled children to the maximum extent appropriate, and (3) provide testing and evaluation in the child's dominant language unless "clearly not feasible."

New York Education Law §§ 4401–4410 (the Education Law) tracks the Act's requirements and sets out the process whereby students receive a free appropriate special education in the least restrictive environment that meets their individual needs, including language needs.

The Education Law directs the board of each school district in New York to form a Committee on Preschool Education (the Committee). The Committee is responsible for evaluating students and recommending services that meet students' needs. Once the Committee makes such a recommendation, the Board of Education must arrange and provide the services.

On March 11, 1994, pursuant to Rule 23 of the Federal Rules of Civil Procedure, plaintiffs moved for certification of a class of preschool students who had not been timely evaluated, recommended for, and/or provided appropriate services. On June 17, 1994 Magistrate Judge John L. Caden recommended that the court provisionally certify a limited class of plaintiffs defined as:

All disabled preschool students living in New York City, ages three through five, who have not been or will not be timely evaluated, recommended for and/or provided special education services.

Upon defendants' objection, the parties negotiated a modified definition in order to address defendants' broadness concerns by also providing that the students in the class be those who were referred to the Committee for a determination of whether they required services. Accordingly, effective August 15, 1994, the court provisionally certified the class of:

All preschool students, ages three through five, living in New York City, who have been or will be referred to the Committee

on Preschool Special Education for a determination as to whether they require special education services and who have not been or will not be timely evaluated, recommended for and/or provided special education services.

The court referred all outstanding certification questions to the Magistrate Judge to report and recommend thereon.

In a Supplemental Report and Recommendation dated February 15, 1995, the Magistrate Judge recommended that the previously certified class be amended to take account of students (1) with limited English proficiency who have not been evaluated in their dominant language by appropriate clinicians and/or (2) who had not received services provided by appropriate professionals. The Magistrate Judge also recommended that the class take into account students who had not been considered for or received services in the least restrictive environment.

Accordingly, the Magistrate Judge proposed the following class:

A) All disabled preschool students living in New York City, ages three through five, who are limited English proficient and who have been or will be referred to the Committee on Preschool Education for a determination as to whether they require special education services and for whom defendants failed to timely provide (i) an evaluation in the student's dominant language by appropriately licensed clinicians [the Proficiency Evaluation Category] and/or (ii) special education services recommended by the Committee on Preschool Education on the Individualized Education Program and provided by appropriately licensed and trained professionals [the Proficiency Services Category], and

B) All disabled preschool students living in New York City, ages three to five, who have been or will be referred to the Committee on Preschool Education for a determination as to whether they require special education services and for whom defendants failed to consider, recommend and/or provide special education services in the least restrictive environment [the Environment Category]. [bracketed designations added]

Because defendants filed objections, the court reviews *de novo* those portions of the Supplemental Report and Recommendation to which objections were made. 28 U.S.C. § 636(b)(1)(B).

In summary, defendants say that the class should not be certified because (1) no single named plaintiff's claims are typical of those of the class and (2) there are no questions of law and fact common to all class members.

Defendants also object to the definition of the class by reference to certain "categories of harm." Defendants say that the Environment Category is amorphous because determination of who has suffered such harm would require the court to engage in case-by-case evaluations. In addition, defendants claim that no named plaintiff has suffered harm typical of the Proficiency Evaluation or Proficiency Services Categories. Finally, defendants say that the Proficiency Services Category should be narrowed to include:

> all disabled pre-school students living in New York City, ages three through five, who are limited English proficient, and for whom defendants failed to timely provide ... (ii) special education services *addressing their limited English proficiency* recommended by the Committee on Preschool Education on the Individualized Education Program and provided by appropriately licensed and trained professionals. [proposed narrowing language underlined]

Defendants' objections are without merit.

"Typicality is present if all the claims are based upon the same course of conduct and are based on a similar legal theory." *David v. Showtime/The Movie Channel, Inc.,* 697 F.Supp. 752, 757 (S.D.N.Y.1988). Here, "plaintiffs are entitled to a free preschool education ... [and] claim that they have been deprived of this statutory right." Supplemental Report and Recommendation at p. 22. Although the claim of deprivation encompasses a number of categories of injury, the typicality requirement does not dictate that each named plaintiff claim that he or she has suffered every type of harm alleged by the class. Because the named plaintiffs "in the aggregate, assert all of the claims asserted on behalf of class members ... the typicality prong is satisfied." *Kenavan v. Em-*

*pire Blue Cross and Blue Shield,* 1993 WL 128012 (S.D.N.Y. Apr. 19, 1993), at *4.

Moreover, because the named plaintiffs "are challenging a *practice* of [defendants], and not [defendants'] conduct with respect to the individual plaintiff," they have satisfied Rule 23(a)'s commonality requirement. *Louis M. by Velma M. v. Ambach,* 113 F.R.D. 133, 136 (N.D.N.Y.1986) (emphasis in the original). *See also Andre H. by Lula H. v. Ambach,* 104 F.R.D. 606, 612 (S.D.N.Y. 1985) (whether "procedures pertaining to classification and placement required by the Act are in place" are common issues).

By the same token, the court need not engage in case-by-case evaluations to determine the identity of those allegedly suffering harm of the Environment Category. As noted by the Magistrate Judge, "plaintiffs seek a systemic resolution to purported violations of state and federal law, not case-by-case determinations of what constitutes the least restrictive environment." Supplemental Report and Recommendation at p. 14. *See also Gomez v. Illinois State Bd. of Education,* 117 F.R.D. 394, 397 n. 1 (N.D.Ill.1987).

Defendants also argue that no named plaintiff has suffered harm encompassed by the Proficiency Evaluation or Proficiency Services Categories. But at least two named plaintiffs allege that they have suffered harm of these types. Defendants' argument goes to the merits of plaintiffs' claims and is not properly before the court at this time. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs ... will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (citations omitted).

Finally, defendants urge that "[i]f there is any rationale to justify a separate category for [Limited English Proficient] students, that rationale disappears where the service recommended is not one addressing limited English proficiency," and suggest that the Proficiency Services Category be more narrowly delineated to include only those services "addressing ... limited English proficiency." City Defendants' Objections to the

Supplemental Report and Recommendation at p. 20.

The court approves the language recommended by the Magistrate Judge. Defendants' proposed modification is potentially confusing at it implies that "special education services" are directed at a student's lack of English proficiency as opposed to a student's disability. Furthermore, because it defines the Proficiency Services category to include harm arising from defendants' failure timely to render "special education services ... provided by appropriately licensed and trained professionals," the language suggested by the Magistrate Judge addresses plaintiffs' claims that they have not received special education services that meet their language needs.

The court approves and adopts the Supplemental Report and Recommendation.

So ordered.

## SUPPLEMENTAL REPORT AND RECOMMENDATION

CADEN, United States Magistrate Judge.

On June 17, 1994 the undersigned issued a report and recommendation provisionally certifying a limited class of plaintiffs in this class action defined as:

All disabled preschool students living in New York City, ages three through five, who have not been or will not be timely evaluated, recommended for and/or provided special education services.

On July 28, 1994, United States District Judge Eugene H. Nickerson held a hearing on defendants' objections to the June 17 report and recommendation wherein plaintiffs agreed to modify the above definition in order to address defendants' amorphousness concerns—defendants were concerned that class members might not be readily identifiable. The parties appeared before this court on the following day and negotiated a modified definition. Accordingly, this court, on the record, certified the following provisional class:

All preschool students, ages three through five, living in New York City, *who have been or will be referred to the Committee*

*on Preschool Special Education for a determination as to whether they require special education services and* who have not been or will not be timely evaluated, recommended for and/or provided special education services. (Emphasis indicates negotiated addition.)

By order dated March 15, 1994, Judge Nickerson referred all outstanding certification questions to the undersigned to report and recommend thereon. On July 29, 1994, August 5, 1994, and January 10, 1995, hearings were held before this court to discuss the final and expanded definition of the class. After considering the parties' submissions and the hearing transcripts, the undersigned issues this supplemental report and recommendation and respectfully recommends certification of plaintiffs' proposed additions with one amendment for clarification purposes.

## I. BACKGROUND

In short, plaintiffs allege that defendants have failed to timely provide them with appropriate special education services as prescribed under state and federal law. Although previously discussed in this court's June 17, 1994 report and recommendation, the pertinent facts and statutory schemes are summarized below.

Named plaintiffs are seven minors ages three through five who are eligible for free preschool special education and reside in New York City. Defendants are, *inter alia,* the New York City Board of Education, the New York City Transportation Department, and the New York State Education Department.

This litigation is controlled by two statutory schemes: the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400–1485, and the New York Education Law ("NYEL"), §§ 4401–4410 (McKinney 1995 Supp.).

IDEA mandates that states receiving federal aid develop a plan to provide a free appropriate special education to all students between the ages of three and twenty-one. 20 U.S.C. § 1400(c); 20 U.S.C. § 1412(2)(B); 34 C.F.R. §§ 300.500–300.556. New York

State receives federal aid under IDEA and accordingly is subject to IDEA's requirements. Under IDEA, each recipient state must: (1) provide adequate personnel to properly evaluate and place students (20 U.S.C. § 1412(2)(A)(iii); § 1414(a)(1)(E)); (2) educate disabled children with non-disabled children to the maximum extent appropriate (20 U.S.C. § 1412(5)(B), § 1414(a)(1)(C)(iv); 34 C.F.R. § 300.550); and (3) provide testing and evaluation in the child's dominant language unless "clearly not feasible" (20 U.S.C. § 1412(5)(C)).

The second statutory scheme, NYEL, tracks IDEA's requirements and sets forth the process whereby students receive a free appropriate preschool special education in the least restrictive environment that meets their individual needs, including language needs.

NYEL directs the board of each district in New York to form a Committee on Preschool Special Education (the "CPSE"). The CPSE's involvement in the preschool education process commences once it receives a written referral from the district board indicating that a student may have an educational disability.[1] When referring a child to the CPSE, the board must provide the parent or guardian with a notice of the referral, a "Notice of Parental Due Process Rights" in the dominant or preferred language of the parent, a list of approved evaluators and providers of preschool special education services[2], and a consent for evaluation form. N.Y.E.L. § 4410(4)(a), (b).

Once the parent of the referred child consents to an evaluation by signing a parental consent form, the first of two 30–day statutory periods begins to run. During the first period, an appropriate evaluation site is considered; the parent chooses a site from a list provided by the board[3], and a multidisciplinary evaluation of the child is performed.

Additionally, within this 30–day period of time, the CPSE must convene to review the child's evaluations and issue a written report in the form of an Individualized Educational Program (the "IEP"). The IEP sets forth the child's eligibility for services, recommends specific services and programs for the child, and describes the extent to which the recommended programs are the least restrictive environment appropriate for the child. 8 N.Y.C.R.R. § 200.16(d).

Once the CPSE has issued an IEP for a child, the Board of Education must arrange and provide the recommended services beginning on the appropriate program's start date (in July, September, or January). If the IEP is issued less than 30 days prior to, or after, such applicable start date, the board has 30 days in which to provide the recommended services—the second 30–day statutory period. This includes providing transportation services. N.Y.E.L. §§ 4410(5)(b), 4410(8), (e); 8 N.Y.C.R.R. § 200.16(e)(1).

## II. REQUESTED RELIEF

■ Plaintiffs propose the following additions to the previously certified class:

A) All disabled preschool students living in New York City, ages three through five, who are limited English proficient and who have been or will be referred to the Committee on Preschool Education for a determination as to whether they require special education services and for whom defendants failed to timely provide (i) an evaluation in the student's dominant language by appropriately licensed clinicians; and/or (ii) special education services that meet the student's language needs; and

B) All disabled preschool students living in New York City, ages three through five, who have been or will be referred to the Committee on Preschool Education for a determination as to whether they require

---

1. The CPSE is charged with reviewing and evaluating (or reevaluating) the education program and options for children referred to it by the board. N.Y.E.L. § 4410(3); 8 N.Y.C.R.R. § 200.16. In addition, the CPSE must review the status of each child referred to it on a yearly basis. N.Y.E.L. § 4410(3)(d); 34 C.F.R. § 300.552(a)(1); 8 N.Y.C.R.R. § 200.16(g).

2. Currently under New York law only preschool special education providers can conduct evaluations. N.Y.E.L. §§ 4410(1)(a) and 9(b); 8 N.Y.C.R.R. § 200.16(g)(2)(i).

3. The list of evaluation sites does not indicate which sites are equipped to perform bilingual evaluations.

special education services and for whom defendants failed to consider, recommend and/or provide special education services in the least restrictive environment.[4]

For the reasons that follow, this court recommends expansion of the previously certified class to include the students described in Paragraphs A(i) and B. This court further recommends that the language provided in Paragraph A(ii) be modified, as discussed below, to better reflect the students that plaintiffs seek to include within this category.

## III. DISCUSSION

### A. Limited English Proficient Students

In the first category, plaintiffs seek certification of limited English proficient ("LEP") students who fall within one or both of two categories: LEP students who have not been evaluated in their dominant language, and LEP students who are not receiving services that meet their language needs.

#### 1. Evaluation by a Licensed Clinician who Speaks the Student's Dominant Language

Under the federal and state statutes outlined above, defendants are required to ensure that testing and assessment procedures, determining whether a student requires special education services, are performed in that student's dominant language. See 20 U.S.C. § 1412(5)(C); 8 N.Y.C.R.R. §§ 200.4(b)(14), 200.1(ee), 200.16(c)(2). It is not disputed that a large number of LEP students are either evaluated by a monolingual clinician (fluent in English only) or by a monolingual clinician with the assistance of an interpreter. Further, it is not disputed that there is a dearth of appropriately trained licensed clinicians to perform evaluations for LEP students.

The statutory provisions grant defendants an exemption from the requirements stated above when it is "clearly not feasible" to provide these services. 20 U.S.C.

§ 1412(5)(C). The parameters of the "clearly not feasible" exemption and defendants' alleged abuse of this exemption will be reviewed by the court when the merits of the case are properly before it. This issue has no bearing on class certification and will not be addressed herein.

The cases of Miguel F. and Jackey S. are illustrative of students who fall within this category. Miguel F. is a LEP student whose dominant language is Spanish. He was evaluated by a monolingual clinician with the aid of an interpreter. Jackey S. is a LEP student whose dominant language is Cantonese. On February 18, 1993, Jackey's mother signed a consent for evaluation form. On that same day, Jackey was evaluated by a monolingual clinician with the aid of an interpreter.

Plaintiffs assert that both Miguel F. and Jackey S. suffer from inaccurate IEPs—the result of flawed evaluations performed by clinicians who did not speak the student's dominant language. Specifically, plaintiffs claim that the unfamiliar language and mannerisms of the clinician may influence and distort the evaluation process. Additionally, plaintiffs argue that the presence of a third party (the interpreter) may overwhelm the child, further exacerbating the imperfections of the evaluation process.

Defendants counter by informing the court that there is a nationwide shortage of qualified bilingual clinicians, and attack the speculative nature of plaintiffs' assertions. While the court acknowledges that a shortage of qualified clinicians may be an ongoing problem, this issue has no bearing on the certification process. If deemed relevant, this issue will be addressed when the merits of plaintiffs' case are reviewed. As for the allegedly speculative nature of plaintiffs' arguments, this court finds them sufficiently specific for certification purposes.

---

**4.** On the last hearing date (January 10, 1995), the plaintiffs informed the court that in order to address defendants' amorphousness concerns, they added the clause "and who have been or will be referred to the Committee on Preschool Education for a determination as to whether they require special education services" to both cate- gories of the class under consideration here. This clause was initially negotiated by the parties in response to Judge Nickerson's directive on the first portion of the class. The court finds that this language, negotiated in the first instance by the parties, addresses and adequately resolves defendants' amorphousness concerns.

### 2. Special Education Services that Meet the Student's Language Needs

Plaintiffs seek to certify a second category of LEP students—LEP students for whom the CPSE has recommended specific services and programs and who do not timely receive such recommended services and programs. At the core of this claim, plaintiffs charge defendants with failing to train and license a sufficient number of clinicians to meet the needs of LEP students.[5]

Plaintiffs maintain that defendants have consistently failed to meet their obligations to LEP students and that LEP students are typically placed in "alternate interim placements" serviced by professionals who are neither bilingual nor licensed to provide bilingual education (i.e., English as a Second Language ("ESL") clinicians). Typically, LEP students stay in "alternate interim placements" until a bilingual program is located. LEP students in "alternate interim placements" are educated through the services of a monolingual teacher and a bilingual paraprofessional. See Maldonado Aff., Exhibit A, Deposition Transcript of Stephen Mittman, dated July 21, 1994. The New York State Education Department has deemed LEP students placed in "alternate interim placements" as underserved. See Maldonado Aff., Exhibit B, Letter from Clement J. Colucci to Roger J. Maldonado, dated Sept. 21, 1994.

Defendants maintain that federal courts should not become involved in delineating what special education services meet the language needs of a given student. Rather, this should be left to the expertise of special education professionals. This court agrees. However, according to plaintiffs' interpretation of this portion of the class, plaintiffs seek implementation of services already recommended by the CPSE. In particular, plaintiffs seek to ensure that defendants provide services and programs recommended in the IEP, and that these services and programs are recommended on the basis of proper evaluations. If, as plaintiffs allege, defendants fail to formulate accurate IEPs because evaluations and assessments of children referred to the CPSE are not performed in the dominant languages of those children, the issue of inappropriately designated services and programs should ostensibly be eradicated with the resolution of this litigation.

The specific language employed by the plaintiffs in Paragraph A(ii) to denote this portion of the class does not comport with plaintiffs' characterizations as discussed above. In fact, the breadth of the language proposed by plaintiffs—"special education services that meet the student's language needs"—appears to justify defendants' concerns that the court may be called upon to exercise judgment properly left to special education professionals. Accordingly, this court finds that in order to certify this portion of the class, the definition must be more narrowly tailored. This court recommends that the language of A(ii) be amended to read: "special education services recommended by the Committee on Preschool Special Education on the Individualized Education Plan and provided by appropriately licensed and trained professionals."

Miguel F., discussed above, is a LEP student whose IEP called for full-time bilingual preschool education, intensive bilingual speech therapy, and bilingual counseling. While Miguel ultimately received bilingual speech therapy and bilingual counseling, he was never offered or provided a full-time bilingual preschool education program—as recommended by the CPSE.

Jackey S., also discussed above, was authorized bilingual speech/language therapy and itinerant services to begin on July 6, 1993. Instead of a Cantonese therapist (as recommended on Jackey's IEP), Jackey was mistakenly provided with a Mandarin therapist. Appropriate services were not provided for Jackey until approximately March 15, 1994— a delay of seven calendar months.

Miguel F. and Jackey S. serve as examples of this portion of the class (as amended).

---

**5.** Plaintiffs distinguish LEP students for whom defendants have failed to provide timely services from the general class of preschool special education plaintiffs (previously certified) on the basis of defendants' failure to license and train sufficient clinicians to meet the needs of LEP students.

Services deemed appropriate for them by the CPSE were either never provided or were delayed.

### B. Least Restrictive Environment.

Federal and state law mandates that, to the maximum extent appropriate, children with disabilities should be educated with their non-disabled peers in the least restrictive environment. This statutory presumption in favor of "mainstreaming" is overcome if the nature or severity of a child's disability precludes satisfactory education in a general education setting, even with supplementary aids and services. *See* 20 U.S.C. §§ 1400–1485; 34 C.F.R. § 300.550; N.Y.E.L. §§ 4401–4410; 8 N.Y.C.R.R. §§ 200.1–200.20.[6]

Plaintiffs contend that defendants must determine the least restrictive appropriate setting for each child's individual needs, and then implement a program in that setting.

Defendants argue that certifying this portion of the class would force the courts to assume a pedagogical role and to undertake review of individual placements. Defendants mischaracterize the relief sought: plaintiffs seek a systemic resolution to purported violations of state and federal law, not case-by-case determinations of what constitutes the least restrictive environment. Such a solution would not be practicable nor viable. *See P.J., By and Through W.J. v. State of Conn. Bd. of Educ.*, 788 F.Supp. 673, 681 (D.Conn. 1992) (courts should defer to agency determinations because "special education personnel are more qualified than the courts to strike an appropriate balance between the preference for mainstreaming ... and the special services needed by handicapped children").

Defendants further argue that plaintiffs misconstrue defendants' obligations under the applicable statutes. Defendants maintain that they are not required to provide the least restrictive environment—rather, they are only required to attempt to provide the least restrictive environment. To the extent this is relevant at this early stage in the litigation, this court notes that the Third

Circuit has expressly held that IDEA "prohibit[s] a school from placing a child with disabilities outside of a regular classroom if educating the child in the regular classroom, with supplementary aids and support services, can be achieved satisfactorily." *Oberti v. Bd. of Educ. of the Borough of Clementon Sch. Dist.*, 995 F.2d 1204, 1206 (3d Cir.1993). The Third Circuit placed the burden on the school to prove compliance with IDEA's mainstreaming requirements. *Id.*

Notably, the United States Department of Education, Office of Special Education, found that during the 1990–1991 school year defendants placed almost 90% of preschool special education students into segregated programs—more than twice the national average of 41.5%. *See* Second Supplemental Kolb Aff., Exh. 15, Fifteenth Annual Report to Congress on the Implementation of I.D.E.A. These figures were confirmed by a 1994 report released by the New York Office of the State Comptroller. *See* Kolb Aff., Exh. 2, Office of State Comptroller, Division of Management Audit at 8–9.

Moreover, due to defendants' particularly poor performance in placing students in the least restrictive appropriate environments, the United States Department of Education, Office of Special Education, has threatened to withhold federal funding for defendants' programs. *See* Second Supplemental Kolb Aff., Exh. 17, Letter from Thomas Hehir to Thomas B. Neveldine, dated April 15, 1994.

The cases of Katie B. and Angel C. are illustrative of this portion of the proposed class. Katie B. has been placed in a segregated program for over one year because there is no integrated program in her home school district. The burden was placed on her parents to obtain a waiver from the adjacent school district so that Katie could be recommended for, and enrolled in, an integrated program there. Unable to obtain a waiver from that school board, Katie's parents chose to place her in a segregated program which is self-contained and center-based.

Katie's mother avers in her affidavit that the administrator of the CPSE in her home

---

**6.** These mandates are applicable regardless of whether the local authority provides free univer-

sal preschool educations to all children. *See* 34 C.F.R. § 300.552 and Note to § 300.552.

district agreed that the most appropriate setting for Katie B. would be an integrated program. The CPSE, however, would not recommend such a program unless it knew one was available. The CPSE in the adjacent district would not issue Katie B. a waiver to attend one of their integrated programs unless her home district would recommend it. Katie's needs have been denied by a system that appears more concerned with issuing recommendations according to available services rather than recommending and finding the most appropriate setting to educate special education preschool students as is legally required. This is the systemic malaise for which plaintiffs seek redress.

The case of Angel C. highlights a similar problem. Angel C. has been enrolled in an integrated Head Start Program since September, 1993. The CPSE determined that Angel needed 30 minute sessions of speech therapy twice a week and recommended that he receive this therapy at a private provider. To accommodate this recommendation Angel must be taken out of his day care program at a time when his mother has obligations to her other school-age children. As a result of the CPSE's failure to secure an appropriate integrated placement for Angel, his mother will remove him from the integrated day care at Head Start and enroll him at a private provider at her own expense.

Plaintiffs allege that Angel C. was placed in an overly restrictive environment and that the CPSE's recommendation was premised primarily on services available in his district. Accordingly, the CPSE failed to discharge its duty as mandated by law.

The cases of Katie B. and Angel C. serve as examples of the alleged systemic violations of the federal and state statutes that plaintiffs seek to rectify through this class action.

## C. Certification under Rule 23

In seeking class certification the burden is on plaintiffs to show that the following requisites of Rule 23(a) of the Federal Rules of Civil Procedure have been satisfied:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

This court finds that plaintiffs satisfy all four requirements of Rule 23(a), each of which is discussed below.

### 1. Numerosity

Neither party addresses the numerosity requirement of Rule 23(a)(1) in their papers. In initially certifying the class, this court found that the numerosity requirement had been satisfied. This court's previous observations are equally applicable to the proposed additions. Further, based on the information presented to date, the court is persuaded that the number of class members will increase as the case proceeds.

Due to the nature of the class, plaintiffs are unable to declare a definitive number of class members—class membership will necessarily change over time. This is not fatal, plaintiffs are not obligated to show an exact number of class members. *See Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir.1993) (*quoting Barlow v. Marion County Hosp. Dist.*, 88 F.R.D. 619, 625 (M.D.Fla. 1980)). In a similar case United States District Judge David N. Edelstein held that a class with a revolving membership renders joinder impracticable and satisfies the numerosity requirement. *Andre H. v. Ambach*, 104 F.R.D. 606, 611 (S.D.N.Y.1985) (citations omitted). *See also Arthur v. Starrett City Associates*, 98 F.R.D. 500, 505–06 (E.D.N.Y. 1983).

The Second Circuit has held that the following factors are relevant when considering the impracticability of joinder: (1) judicial economy; (2) geographic dispersion of class members; (3) the ability of class members to initiate individual suits; and (4) requests for prospective injunctive relief involving future class members. *Robidoux*, 987 F.2d at 936. Here, the proposed class members have limited financial resources, limited proficiency in English, and little or no familiarity with the American legal system. Plaintiffs' inability to bring legal action on their own clearly favors certification. Additionally, plaintiffs

seek relief for future class members in the form of a preliminary injunction.

Because the class membership is revolving—rendering joinder impracticable, and because plaintiffs' claims would not otherwise be heard, the undersigned finds that the numerosity requirements of Rule 23(a)(1) are satisfied.

### 2. Commonality

■ Rule 23(a)(2) requires that there be questions of law or fact common to the class. Named plaintiffs have suffered from a delay in the evaluation for, recommendation for, and/or provision of, preschool special education services. Additionally, named plaintiffs have suffered from the defendants' failure to timely provide evaluations in their dominant languages by an appropriately licensed clinician and to implement the CPSE's recommendations. Finally, named plaintiffs have suffered by defendants' failure to consider, recommend, and/or provide special education services in the least restrictive environment. Together, these comprise the common questions of fact.

Defendants assert that the proposed additions to the class raise student specific issues. Plaintiffs allege system-wide failures in the evaluation and placement of students. Defendants overlook the systemic nature of the problems plaintiffs seek to cure. This suit is brought to challenge the practices and policies of the defendants, and to determine whether or not defendants' actions are in violation of state and federal law—the common question of law.

For the foregoing reasons, it is the finding of this court that the plaintiffs in the expanded class share common questions of law *and* of fact. Accordingly, the undersigned finds that plaintiffs have met their burden under Rule 23(a)(2).

### 3. Typicality

■ Rule 23(a)(3) requires that the claims and defenses of the named plaintiffs be typical of those of the class as a whole. The typicality requirement is met if the representative party's claim " 'arises from the same event or course of conduct that gives rise to

the claims of other class members and is based on the same legal theory.' " *Stieberger v. Sullivan*, 738 F.Supp. 716, 731 (S.D.N.Y.1990) (*quoting Paskel v. Heckler*, 99 F.R.D. 80, 83 (E.D.Pa.1983)).

■ Here, plaintiffs are entitled to a free preschool special education under IDEA and NYEL. · Plaintiffs claim that they have been deprived of this statutory right. While the specific disabilities of the named plaintiffs are different—each disabled child is unquestionably unique—it is the finding of this court that the named plaintiffs are sufficiently typical of the expanded class. *See, e.g., Robidoux*, 987 F.2d at 937 (minor variations in fact patterns underlying individual claims are irrelevant if named plaintiff and the class are affected by the same unlawful conduct).

Accordingly, plaintiffs have satisfied the requirements of Rule 23(a)(3).

### 4. Adequacy of Representation

■ Rule 23(a)(4) requires that class representatives fairly and adequately represent the interests of the class. The Second Circuit has instructed that this requirement comprises two separate inquiries: whether the representative parties' attorneys are qualified, experienced, and generally able to conduct the litigation; and whether there is a actual or potential conflict of interest between the representative parties and the remainder of the class. *See Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 562 (2d Cir.1968).

This court is fully familiar with the unimpeachable qualifications, ability, and experience of plaintiffs' counsel. Nor do defendants attack this prong of the inquiry. Rather, defendants contend that two of plaintiffs' attorneys, Mr. Maldonado (Teitelbaum, Hiller, Rodman, Paden & Hibsher) and Ms. Autin (Advocates for Children), have a potential conflict of interest in that they are counsel in *Jose P. v. Sobel*, 79 CV 270 (EHN), an ongoing class action before this court on similar issues relating to special education students in New York ages 6—21. Defendants claim that the class certified in *Jose P.* and the *Ray M.* class will be vying for the

same limited pool of resources and that this presents a potential conflict.

In its June 17, 1994 report and recommendation, this court found that this potential conflict could be cured by submission of affidavits from the parents of the named plaintiffs acknowledging and waiving potential conflict. Affidavits have been procured from the parents of six of the seven named plaintiffs.[7]

Defendants have deposed three of the six parents who have submitted affidavits, and argue that the affiants do not understand what they have signed. This court disagrees. It is the finding of this court that the submitted affidavits sufficiently dispel defendants' conflict concerns to allow certification to proceed. Defendants' arguments are further undermined by the fact that not every member of the plaintiffs' team labors under this potential conflict. However, if appropriate, defendants may challenge Mr. Maldonado and Ms. Autin's presence on the plaintiffs' team when and if that becomes an issue.

The class currently being considered for certification has no actual or potential conflict between the named plaintiffs and the remainder of the class. Accordingly, this court finds that plaintiffs have met their burden as to the second prong of Rule 23(a)(4).

Having found that all four requirements of Rule 23(a) of the Federal Rules of Civil Procedure have been met, the court turns its attention to the requirements of Rule 23(b). To certify a class the court must find that the proposed class meets the conditions of one of the subsections of Rule 23(b).

### 5. Rule 23(b)(2)

■ Plaintiffs maintain that they satisfy the requirements of Rule 23(b)(2):

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

This court finds that plaintiffs' allegations are consistent with the requirements of Rule 23(b)(2). Specifically, if plaintiffs are able to substantiate their allegations that defendants have consistently failed to comply with statutory requirements under IDEA and NYEL, declaratory and injunctive relief are appropriate remedies. *See, e.g., Andre H.,* 104 F.R.D. 606, 612 (S.D.N.Y.1985) (injunctive relief is an appropriate remedy if, as alleged, defendants "failed to develop and implement policies and procedures to ensure that class members receive individualized education programs and a free appropriate education"). Accordingly, the undersigned finds that plaintiffs have satisfied the requirements of Rule 23(b)(2).

### D. Mootness

■ In a final effort to prevent certification, defendants raise the argument of mootness. In particular, defendants claim that as time progresses and the named plaintiffs age out of the class, or receive appropriate services, the question may arise whether they can still act as class representatives. The Supreme Court has ruled on this issue several times and has explicitly held that in class actions where the membership is transitory and a defendant has the power to moot out a named plaintiff's claim, mootness will not disqualify that plaintiff from serving as a class representative. *See United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 399–404, 100 S.Ct. 1202, 1210–13, 63 L.Ed.2d 479 (1980); *Gerstein v. Pugh,* 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 861 n. 11, 43 L.Ed.2d 54 (1975); *Sosna v. Iowa,* 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975).

Here, plaintiffs' claims are inherently transitory; plaintiffs will either age out of the class or receive services before relief can be obtained through litigation. *See, e.g., Robidoux,* 987 F.2d at 939. Accordingly, any present or future issue of mootness does not bar the named plaintiffs from serving as class representatives.

---

7. Plaintiffs' counsel assure the court that they are exercising their best efforts to obtain the seventh

necessary affidavit (Anatalia F.). The court has no reason to doubt this representation.

## IV. CONCLUSION

Having found that the plaintiffs meet the requirements for certification under Rule 23, this court respectfully recommended that the following additions be made to the previously certified class:

A) All disabled preschool students living in New York City, ages three through five, who are limited English proficient and who have been or will be referred to the Committee on Preschool Education for a determination as to whether they require special education services and for whom defendants failed to timely provide (i) an evaluation in the student's dominant language by appropriately licensed clinicians; and/or (ii) special education services *recommended by the Committee on Preschool Education on the Individualized Education Program and provided by appropriately licensed and trained professionals;* and

B) All disabled preschool students living in New York City, ages three through five, who have been or will be referred to the Committee on Preschool Education for a determination as to whether they require special education services and for whom defendants failed to consider, recommend and/or provide special education services in the least restrictive environment. (Emphasis indicates new language.)

Objections to this report and recommendation must be filed with the Clerk of Court within ten (10) days to preserve appellate review. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure; *see also Small v. Secretary of Health and Human Services,* 892 F.2d 15, 16 (2d Cir.1989).

Dated: Brooklyn, New York

February 15, 1995